IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-2079-JLK

ST. MARY CATHOLIC PARISH IN LITTLETON, et al.,

Plaintiffs,

vs.

LISA ROY, et al.,

Defendants.

---

REPORTER'S TRANSCRIPT

Status Conference

---

Proceedings before the HONORABLE JOHN L. KANE, Judge, United States District Court for the District of Colorado, commencing on the 21st day of September, 2023, in Courtroom A802, United States Courthouse, Denver, Colorado.

APPEARANCES

For the Plaintiffs:
NICHOLAS R. REAVES and JOSEPH C. DAVIS, The Becket Fund for Religious Liberty, 1919 Pennsylvania Avenue NW, Suite 400, Washington, DC 20006

For the Defendants:
RYAN K. LORCH and VIRGINIA R. CARRENO, Colorado Attorney General's Office, 1300 Broadway, Denver, CO 80203

Reported by KEVIN P. CARLIN, RMR, CRR, 901 19th Street, Room A259, Denver, CO 80294, (303)335-2358

P R O C E E D I N G S

(Proceedings commenced at 10:35 a.m.)

THE COURT: This is case number 23-cv-2079, and it was set today at my instance to discuss the status of this matter. And for the record, I will make a brief statement as to the present status of the case -- the background, that is.

This is St. Mary Catholic Parish in Littleton et al. versus Roy et al., and it comes before me for this initial status conference. The plaintiffs, the Archdiocese of Denver, two Catholic Parishes that operate schools, and two Catholic parents, are suing representatives of the Colorado Department of Early Childhood and Colorado's Universal Preschool Program, alleging violations of their free exercise and free speech clauses of the First amendment to the U.S. Constitution, as well as a general violation of that amendment for, quote, denominational favoritism, close quote.

Plaintiffs allege that the State of Colorado, through implementation of its Universal Preschool Program, the acronym being the UPK -- all of us seem to be afflicted with acronyms in this day and age -- and the program is offering a benefit to some preschool providers while impermissibly denying that benefit to specific sectarian schools and to parents who choose to send their children to those sectarian schools.

Plaintiffs contend that by requiring participating providers to refrain from engaging in discrimination as

specified in the statute and the program service agreement, the State of Colorado is disfavoring adherence of the Catholic faith. Seeking immediate relief, plaintiffs have moved for a preliminary injunction requesting that I, quote, enjoin defendants from denying plaintiffs' participation in Universal Preschool Colorado based on their religious beliefs, character, and exercise, close quote.

And that's electronic case filing number 32, the motion for preliminary injunction. Is that a -- is that a sufficient statement of the background, Mr. Reaves?

MR. REAVES: Yes, Your Honor. That seems correct to us.

THE COURT: All right. Thank you. And do you agree with that, Mr. Lorch?

MR. LORCH: Good morning, Your Honor. That's an accurate representation of what plaintiffs have alleged in this case. However, of course, the defendants stand behind the program and --

THE COURT: All right. Okay. Thank you. I just want to make sure that we're all talking about the same thing. That generally helps in a court.

I have some questions that I want answers from both sides on this, and the first is that the complaint contains a jury demand for all issues so triable. I don't know what those issues are, and so I need to know that.

The second is that given that there are as-applied challenges to the Universal Preschool Program's constitutionality, do the parties anticipate a need for more formal discovery or more inclusive discovery? And do the parties expect informal discovery to adequately inform and prepare the parties for trial, or is more formal discovery needed? How long do the parties anticipate they will need for any such discovery?

Do the defendants anticipate filing a motion to dismiss? Will the briefing schedule for that filing alter the timeline for the preliminary injunction request?

And four, would the parties be amenable to converting the motion for preliminary injunction into a hearing on the permanent injunction with an expedited trial schedule?

And the reason I make this point is why have two separate hearings if it's going to be fully briefed, and we can have a hearing and make a preliminary -- or a permanent injunction? I am certainly of the view, and I doubt it will be contradicted, that no matter what my ruling is in this case, it's going to be appealed. So, why appeal a preliminary injunction and then appeal a permanent injunction? It doesn't make economic sense to me.

And in that regard, I wish to point out that the reason I'm raising it at this point is because Rule 1 as amended in 2015 of the Federal Rules of Civil Procedure require and state

that case management is the responsibility not only of the Court, but of counsel as well.

So, the best way that I can think of to proceed in this matter is to get your views on whether we should combine these two, or in effect drop the preliminary injunction, make it a permanent injunction, have whatever briefing schedule and discovery that you think is necessary, and then have an expedited trial on the preliminary injunction.

So, those are my questions, and I would ask Mr. Reaves, if you would, please -- if you need me to refresh you on those, I will be happy to, but I'd like to hear from you, and then from the defendants' counsel. And in that regard, I realize I have asked more questions of defendant than I have of plaintiff. So, you don't have to answer all the questions.

MR. REAVES: That sounds great. Thank you, Your Honor. I think I've got them all down, but feel free to add or jump in if I don't hit all the points. First, in terms of the jury demand, the only form of relief that we sought that would require a jury trial is the nominal damages claim, which we included in this case. We think, you know, damages would sound in law as opposed to the injunction, which would be an equitable determination.

THE COURT: I will hear from defense counsel on that as well, but I can tell you right now that given the -- what do I want to say? Given the predominance of the equitable relief,

it would be my intention under any circumstance to sever whatever kind of jury trial would be necessary.

MR. REAVES: And, Your Honor, I don't think we would really separately want a jury trial just on nominal damages. I think it would be our position that we probably could resolve a lot of this case through, you know, a short discovery process and then summary judgment at the end.

THE COURT: That makes sense to me.

MR. REAVES: Without the jury trial. In terms of discovery more generally, Your Honor, I will answer with a caveat that we haven't yet seen what factual disputes the other side will raise in their response to our preliminary injunction motion, but our position is we don't anticipate this being a very fact-intensive case. We think based on the evidence we've already put before the Court, we've submitted enough to show a likelihood of success on the merits for purposes of our preliminary injunction.

We do think some discovery would be helpful in this case, and there are a few specific topics. I think for example a 30(b)(6) deposition could be useful from the State, or something along those lines. More generally, in terms of timeline, I do think because it's a very limited amount of facts that are probably going to be in dispute, we think this could be a very short discovery period, potentially even six months.

I guess related to that, Your Honor, we would push back

on the idea of consolidating the preliminary injunction with the permanent injunction hearing, the main reason being we think that would slow down, you know, the preliminary injunction and the relief that we need for our clients.

THE COURT: Well, I plan on expediting the hearing on a permanent injunction. And I frankly think six months is excessive for the limited amount of discovery that you're suggesting. If it's one 30(b)(6) deposition, we're not talking about six months to get that done.

MR. REAVES: I would agree, Your Honor. I think we're probably open to an even faster schedule. I do know in talking informally to the defendants that they were anticipating a longer discovery period, but I will let them answer as well.

THE COURT: All right.

MR. REAVES: But I think our position on consolidating it is still that there is a different legal standard, of course, between showing a likelihood of success on the merits or the PI. I really think we've put in enough evidence on that already. We would be happy to do an expedited, even just an oral argument on the PI, Your Honor, and then set a very brief discovery period for purposes of summary judgment.

The reason I would push back on consolidating is just because the enrollment period for our clients, the time in which families enroll in the school for the next academic year starts in mid October, and typically wraps up in January. So, our hope

would be to try to get resolution of this case sometime in December -- or resolution of the PI, I'm sorry, sometime in December to try to get --

THE COURT: Mr. Reaves, I'm sorry to interrupt you. I didn't mean to do that.

MR. REAVES: Go ahead, Your Honor.

THE COURT: The test -- one of the reasons I raise this is you're interested in the substantive ruling of law on the constitutional issue that's raised, but the test for a preliminary injunction is to maintain the status quo ante bellum, which means what was the status before the suit was filed? And the status quo ante bellum was the operation of the statute.

So, I don't know why -- and then if that were appealed, then what do we do? Wait until that's over with before we come to the permanent injunction? And it seems to me that it makes economic sense for your clients as well as for the State, but I think in terms of management, it makes a great deal more sense that we just proceed to the permanent injunction.

And if your clients have -- some of them, the parents for instance have additional expense that might be required because of the preliminary injunction not granting that relief, that that could easily be handled by a promissory note.

MR. REAVES: Your Honor, if it were possible to expedite that process, I think we potentially could be amenable

to that. You know, I think if we could try to get relief in the next few months, that would be amenable.

THE COURT: It seems to me that makes perfect sense for everybody, is to have this done in a few months by the first of the year, and get it all done, and then it goes to the Court of Appeals.

MR. REAVES: Yeah.

THE COURT: No matter what I do.

MR. REAVES: Yeah. I think we would be amenable to that, Your Honor. I think there really isn't -- I don't think there will be a lot of factual issues in this case. I think it primarily is a question of law. And so consolidating on a very quick schedule would be okay with us.

THE COURT: Okay. All right. I think that pretty much handles your answers, but I want to hear from the State now.

MR. LORCH: Just to answer one of the questions that you asked about whether or not the State was intending to file a motion to dismiss or anything dispositive, and I think --

THE COURT: I want you to know that -- let me interrupt you just a moment. I am hearing impaired, and as a consequence, I have a realtime screen, because my court reporter is not hearing impaired. And I can read what you're saying at the same time. So, I don't want you to think that I'm looking at a review of the CU-CSU game, but I'm actually reading what

you have to say when I'm not looking at you.

MR. LORCH: Okay. Thank you. That was a great game. But I think to one of the questions you asked, Your Honor, was whether or not the defendants were planning to file a motion to dismiss. And I can't say that is -- the defendants are anticipating filing a motion to dismiss in response to complaint. We're still waiting -- and, again, it's not until October 16th, but to the extent that that is the plan, the motion would address threshold jurisdictional issues that I think would need to be resolved before any of these types of expedited merits and type of, you know, pushing this case forward.

THE COURT: Couldn't all that be combined?

MR. LORCH: Combined in a -- in a more --

THE COURT: In just a response to the motion for preliminary injunction, and raise the issues of jurisdiction at the same time? We find that to be an efficient means of handling removal cases from state to federal court, whether or not we have jurisdiction or not. And it speeds things up if we do it all at once.

MR. LORCH: Your Honor, right now both deadlines are at the same time. They're both on October 16th. But I think there's a couple things. One is plaintiffs' counsel has alluded to the idea that there's not factual disputes or issues surrounding factual issues, and I think standing goes to some

factual issues. You know, right now we don't anticipate as we're standing here right now for pre -- you know, if we did a preliminary injunction type of discovery.

However, again, we're very early on in the briefing schedule, and to the extent that this case were to move forward, you know, we would expect to take discovery, 30(b)(6) depositions of the schools. There's individual plaintiffs in this as well. And in our view, we see as addressing those threshold jurisdictional issues first, and not expediting this case to a type of permanent injunction, as the Court alluded to.

THE COURT: Well, I think you could handle the threshold jurisdictional issues at the same time that you handle the merits of the motion for permanent injunction. What I'm trying to get at is why go through two separate trials when one will do?

MR. LORCH: Well, Your Honor, to the extent that we were to move forward with, say, a permanent type of injunctive relief instead of doing typical preliminary and then permanent, that would, again, to -- plaintiffs' counsel raised the difference of the standards, but it would also highly increase the need for extending discovery, because I think to the extent that we were to combine everything and do a permanent type of injunction, we would certainly want to have the most developed record that we could.

Because again, if we're dealing with threshold

jurisdictional issues that are purely factual issues, again, that's why in the State's view moving forward with, you know, moving expeditiously towards a permanent hearing, especially with an undeveloped record, when there are threshold jurisdictional issues --

THE COURT: When I was a practicing lawyer, the senior partner in my firm always admonished us and said, don't make a federal case out of it. That's what we're doing. This will go on, the permanent, the temporary injunction, the preliminary injunction. What we've done is eliminate the temporary restraining order. That hasn't been asked for. So, we now have a preliminary injunction. We will take up the time, do that. It has a totally different set of criteria than the permanent injunction, and then you go through a period of discovery and then set the matter down, and then you have to be consistent with my trial docket.

And I have to tell you, I'm sure you're probably already aware of this, but we've been short two or three judges on this court because of the apparent inability of the senate to vote on anything. So, my trial docket is filled. I'm fortunate in having some time between now and the first of the year and giving this case the priority that it deserves, and it does deserve that from the interest of both sides. I can do that.

But if we're going to have a preliminary injunction, I'm still going to permit some discovery before that, and then

we will have the hearing on the preliminary injunction. Whatever the result is, it's going to -- granted or denied, I think it's going to be appealed to the Tenth Circuit, and then we're going to have to have the permanent injunction, and what have we accomplished?

MR. LORCH: No. And I -- and I understand, Your Honor. And I think from -- what we want to make sure is that to the extent that if it were to get consolidated on a permanent injunction and that was the only hearing that was at issue, again, we would want as fully developed a record as possible. And I'm concerned about the timing to the extent that the Court wanted to move that expeditiously, of whether or not that's enough time to develop a full record.

THE COURT: Okay. Let me -- let me suggest this. Why don't we set forth a -- an abbreviated discovery period to see if you've got what you need from both sides, and that we can then make a -- when we have a better sense of the heft and feel of the issues, can make that other decision.

And we can -- you don't need to -- I can extend the time to file the motion to dismiss until after whatever discovery period there is, and the replies and the briefing schedule and all that. So, I'm not going to deprive you of something you're entitled to do, but I want to persuade you that there's a better way of handling it. That's all.

So, why don't we do that. Why don't we just have a

short period of discovery, see what you can put into it, and then -- and I realize that, you know, you're attorneys, and you're busy. I hope you realize that's true with me. Even though I'm no longer allowed to practice law, I'm still busy.

So, what I suggest we do, then, is we will recess, ask counsel to come back to my chambers where the judicial assistant can set forth a time, but I can give you a time now to discuss among yourselves how much time you really think you need. And then we can have that discovery and then come back again and look and see what the pleadings are. Does that make sense to you?

MR. LORCH: Yes. I just want to make sure I understand. So, the idea of doing an abbreviated discovery period in anticipation of filing dispositive motion --

THE COURT: You can do it -- that's right. All I'm going to do is extend the filing times for any further pleadings until you have discovery so that we don't end up with supplemental pleadings and all that sort of thing. And then when you have that discovery done, you're able to make a more confident prediction of how much is needed to be done in the future.

So, I don't know what you're talking about, but I think you could agree on how much discovery you need, but for heaven's sake, it doesn't take that long to take 30(b)(6) depositions. And if that's about all there is -- there might be some document

inspection too. I don't know. You might want to exchange that. But it's better to get that done with counsel cooperating with one another than it is to -- I must be in a Shakespearean mood this morning, but it must be better to do that than to let loose the dogs of war, cry havoc and let loose the dogs of war. Okay?

So, why don't I recess. You talk to each other. See what you need in terms of discovery, if you can agree upon timing for that, and then immediately thereafter, we will give you a hearing, a status conference where we can come in and set forth a blueprint that's based upon information rather than supposition. That's what I'm looking for. Does that make sense to you?

MR. LORCH: It does, Your Honor.

THE COURT: All right. Do you agree, Counsel? All right. He's nodding his head too. Yes. Go ahead.

MR. REAVES: Your Honor, that sounds right to us as well. I think that makes a lot of sense. You know, in thinking it over at the counsel table, I do think -- you know, I do think this could be consolidated into one injunction hearing for the reasons you articulated. Especially if we could do it quickly and have it wrapped up by the end of the year.

THE COURT: Well, I'm going to give this case the preference on my calendar that conscience allows me to do. I have other cases, but I'm going to give this case that sense, because I realize the importance of it for both sides. And

frankly, there are little children involved in this. So, that -- that touches me, too, to find out what we're going to do about them. I'm not too worried about lawyers, but I am about children.

MR. REAVES: That all sounds right to us, Your Honor.

THE COURT: Then I will ask you to stay in here. If you want to use the courtroom, jury room to confer, the conference room, feel free to do that, and then let my courtroom deputy know when you want to get back on the record, and we will see what we're going to do. We'll be in recess.

(Recess at 10:59 a.m., until 11:41 a.m.)

THE COURT: Alphonse or Gaston, either one will do.

MR. REAVES: Thank you, Your Honor. After talking with my colleague about your proposal to combine the preliminary injunction and the permanent injunction and to resolve both efficiently and expeditiously before the end of the year, we think that's the right approach.

We proposed a schedule to counsel on the other side that would resolve -- that would have a short discovery period, we think really two to three depositions per side with some written discovery, and exchange of documents would be sufficient. Then we would do a round of briefing that would address the discovery for Your Honor, and then we think we could do a merits hearing probably sometime in the beginning of December to give the Court the opportunity to resolve this by

the end of the year.

You know, that I think makes the most sense from our perspective. We unfortunately weren't able to reach an agreement with the other side. I will let them explain their position, but they would push for a longer discovery period.

THE COURT: Okay. Thank you. Mr. Lorch?

MR. LORCH: Judge, again, I think one of the things I wanted to address ahead of time is this factual issue that counsel raised around enrollment period, specifically with regard to children. And this is something that, again, I think why we need a discovery period to get into this issue, but enrollment for 2023-2024 under the Universal Preschool Program does not take place until the spring. So, to the extent that there's a rush to get this moved and resolved right now, that doesn't resolve the fact that under the school's program and how it works with actual students and getting providers enrolled into the program, that wouldn't happen until the spring, to the 2023-2024 school year.

Now, as to the proposal that plaintiffs are presenting here, they said two to three depositions per side. That doesn't even cover the amount of plaintiffs that are at issue in this case. Again, the Archdiocese says that it speaks on behalf of 36 different schools. That's 36 different schools who know 36 different internal school policies.

And, again, you know, another issue, too, Your Honor,

is we haven't had initial disclosures. That depending on how many people are identified in the initial disclosures could dramatically increase the need for the amount of discovery. We anticipate that to the extent that discovery moves forward, there will be written discovery prior to depositions, and depositions of at least all of the plaintiffs.

Now, I know, Your Honor, in your practice standards, specifically it's by scheduling order, it discusses six months if there's only one named plaintiff, and 12 months if there's numerous plaintiffs.

THE COURT: Well, that's the usual way to proceed, but we're trying to make accommodations here.

MR. LORCH: Absolutely. And, you know, we would be open to a, you know, four-to-five-month discovery window or something like that, and then we can check back in with the Court as you mentioned and do a type of status, hey, do we need to move forward with a consolidating hearing or something like that? But the offer that the plaintiffs present is essentially one month of discovery. That's it. They haven't had initial disclosures exchanged yet. Briefing isn't completed.

And to the extent that the Court is interested in consolidating and having a permanent injunction on a merits hearing, we would want as much time as possible to develop a fully-fleshed record. So, to the extent that that is a direction the Court would go, we would ask for at least four to

five months of discovery before we even get into a position to check in on is there going to be dispositive motions briefing? Are we going to be having one merits hearing?

The option that plaintiffs have put forth is just -- it's too soon. It does not allow for an adequate record for this Court to enter the type of injunction that plaintiffs are asking for for an entire state program.

THE COURT: Well, I do want to allow some discovery to take place. I don't see the necessity of having discovery for all of these possible schools that might join in later when what we're concerned about is a need to economize and have one hearing rather than two, but that doesn't seem to be possible.

So, this is what we're going to do. I am going to permit discovery and motions to take place, and this will not be all discovery. You can select what discovery you want to take, and that would include three to five depositions per side. And the exchange of documents and inspection of documents will take place without limitation, and with agreement by counsel, and we will set a -- this limited discovery cutoff date and motion date at the same time for a specific date. And that date will be set by my judicial administrator.

We will have -- at the same time that that's done, counsel will file a proposed scheduling order. You will know more about the case after you take the depositions. So, you can file a proposed scheduling order by this deadline. And at that

time, I will examine it. I will send out a notice as to what we need to do further. You can include in your proposed scheduling order or attached to it whatever suggestions you have, and then I will make a finalized order as to determine whether we're going to have a preliminary injunction hearing in addition to a permanent injunction hearing or not. I'm going to have to be convinced that it makes sense, frankly, from both sides.

The tests are different, and it doesn't accomplish -- preliminary injunctions are usually given when there are ongoing businesses or ongoing activities such as in a hospital that take place. We're talking about an enrollment period that doesn't start until the spring; is that correct?

MR. LORCH: That's correct, Your Honor.

THE COURT: What do I enjoin? So, all right. We will ask counsel to come back to chambers and get a date, and then file the -- for limited discovery, and then for -- and file a proposed scheduling order for the rest of the case. Yes, sir?

MR. REAVES: Your Honor, I think we would be amenable to that, as long as this kind of initial discovery period would be pretty quick, and would be this fall.

THE COURT: It's going to be done not later than December 1.

MR. REAVES: Yeah. We would be amenable to that, Your Honor. I do think that makes a lot of sense.

THE COURT: You've got all of October and November to

take six depositions.

MR. REAVES: Right.

THE COURT: It doesn't make sense to me that it would take longer than that.

MR. REAVES: I agree, Your Honor. And just in terms of the one or two points that defendants were making, you know, all of our plaintiffs are seeking identical injunctive relief, and if one of them has standing, that's more than sufficient to move forward on the merits, and it's going to be the same merits determination.

THE COURT: Standing is a pivotal issue in this case, and it needs to be briefed. It needs to be argued. The motions have to be filed, and we have to determine that. But I'm trying to take a global look at this and see what happens at the end of the road, and that's why I asked you to come in today.

So, we will do this. The deadline will be not later than December 1. We will see what my judicial assistant says. And when I get that, then I will set down a hearing very shortly thereafter for a status conference so that we can proceed from that point on. You have briefs in the meantime. You've got until December 1 to file them.

If you can file them sooner, do. It will give me much more time to work on them. And if you have a response brief or a reply, do them as quickly as you can. Don't think of me. Think of the people that are involved in this lawsuit. Okay?

MR. LORCH: Just a quick clarifying question?

THE COURT: Yes, sir.

MR. LORCH: So, right now, we have the briefing deadline of October 16th for whatever responsive briefing we're filing, responsive complaint, and also in response to the preliminary injunction. So, I'm just trying to get an understanding of --

THE COURT: I said you can get it done later. How about -- you said October 16th?

MR. LORCH: Correct. That's the current deadline.

THE COURT: How about November 16 for you? That gives them some time to get a response in.

MR. LORCH: Well, to the extent that we're going to be engaging in discovery in anticipation of December 1st, I just --

THE COURT: Yeah. I know. That means getting off the starting blocks and getting the discovery done so you can get the motion done.

MR. LORCH: Yes. And I think to the extent that that is certainly the intention given the current schedule -- so, November 16th is being the deadline for us to respond to the preliminary injunction as well? Just trying to get an understanding of kind of if the intention is to have an -- whether or not we're going to do a combined hearing --

THE COURT: You don't need to file a response to the motion for preliminary injunction or the motion for permanent

injunction. If you're going to file a motion to dismiss, I want it done, and so that it's briefed and we can have that determined and have some sense of where we are.

By December 1, I want whatever briefs are to be filed to be filed, but that doesn't mean -- if you have a response to the preliminary injunction, you need more time because of the discovery and because you want a ruling on the motion, we will give it to you, but delay is what I'm trying to avoid. Okay? And if you have good cause for it, just ask for time. I will give it. I'm really not trying to lash you to do things. I just wanted everybody to move quickly on this.

MR. LORCH: Thank you, Your Honor.

THE COURT: Yes, sir?

MR. REAVES: So, just to clarify, Your Honor, if they want -- if they do decide to file a motion to dismiss, we would set some sort of briefing schedule so that the reply would be filed by 12/1, as some sort of schedule?

THE COURT: Right.

MR. REAVES: We're amenable to that, to having all the briefing completed before then. We would just like to set an internal --

THE COURT: Yeah. If it's -- if you don't have the time because it's too late coming in and you need more time, then the schedule isn't going to operate, and you just file a motion to let me know. We're trying to operate in good faith

that you get the motion done as quickly as possible, get an answer or a response as quickly as possible, and then get a reply.

MR. REAVES: Sounds good to us, Your Honor.

THE COURT: Okay? All right. Come back, and we will give you -- I don't think we need to have you come back, do we? The deadline is December 1st.

THE COURTROOM DEPUTY: Not right now. You can check with Deb when you go back. You can check with Deb. She needed to talk to you first.

THE COURT: I have to see my boss. Hang on.

(Recess at 11:54 a.m., until 11:55 a.m.)

THE COURT: The higher court says that we will issue a printed order as to these deadlines that will meet with conflicts that I have in my schedule, and it's going to take a little bit longer, like December 16th before we're actually ready to get the order in that I'm looking for, the proposed scheduling order. But that will go out today, and you will have that. And that's all I can tell you. Okay? I will be in recess. You are too.

(Proceedings concluded at 11:56 a.m.)

REPORTER'S CERTIFICATE

I, KEVIN P. CARLIN, Official Court Reporter for the United States District Court for the District of Colorado, a Registered Merit Reporter and Certified Realtime Reporter, do hereby certify that I reported by machine shorthand the proceedings contained herein at the time and place aforementioned and that the foregoing pages constitute a full, true, and correct transcript.

Dated this 29th day of September, 2023.



Kevin P. Carlin, RMR, CRR
Official Court Reporter