**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 23-cv-02079-JLK

ST. MARY CATHOLIC PARISH IN LITTLETON;
ST. BERNADETTE CATHOLIC PARISH IN LAKEWOOD;
DANIEL SHELEY;
LISA SHELEY; and
THE ARCHDIOCESE OF DENVER,

       Plaintiffs,

v.

LISA ROY, in her official capacity as Executive Director
of the Colorado Department of Early Childhood; and
DAWN ODEAN, in her official capacity as Director
of Colorado's Universal Preschool Program,

       Defendants.

---

**ORDER ON THE PARTIES' JOINT STATUS REPORT (ECF NO. 62)**

---

Kane, J.

       Plaintiffs in this case—the Archdiocese of Denver, two Catholic parishes that operate preschools, and two Catholic parents of a preschool-aged child—bring assorted claims under the First Amendment to the U.S. Constitution challenging the application of the Colorado Universal Preschool Program's nondiscrimination requirements to them specifically. Shortly after filing their Complaint, Plaintiffs filed a Motion for Preliminary Injunction (ECF No. 32), requesting that the Court "preliminarily enjoin Defendants from denying Plaintiffs participation in [the

1

Colorado Universal Preschool Program ("UPK Colorado")], based on their religious beliefs, character, and exercise, including:

> (i)    prioritizing Catholic families in admission;
>
> (ii)   requiring employees to abide by and uphold Catholic teachings, including on life, marriage, gender, and human sexuality;
>
> (iii)  considering for purposes of admission or retention whether a family or child seeking placement abides by and upholds Catholic teachings; and
>
> (iv)   operating their schools in accordance with Catholic teachings."

Mot. for Prelim. Inj. at 8, ECF No. 32. Plaintiffs later filed an Amended Complaint that seeks similar injunctive relief on a permanent basis, as well as declarations that UPK Colorado's nondiscrimination requirements "violate the First Amendment to the United States Constitution as applied to Plaintiffs' religious exercise." Am. Compl. at 35-36.

After the case was assigned to me, I held a status conference to explore with the parties whether consideration of the preliminary injunction Motion could be consolidated with the determination of the final merits. *See* Fed. R. Civ. P. 65(a)(2). The parties agreed at that time to engage in limited initial discovery and then to propose how to move forward with the case. Pursuant to that plan, I ordered the parties to submit a joint status report on or before November 16, 2023. *See* Order Re: Initial Discovery at 2, ECF No. 36. In the status report, the parties were to address:

> (1) whether the parties believe[d] additional discovery [would] be necessary beyond the December 1 cutoff date, the scope of any such discovery, and desired deadlines; (2) whether Plaintiffs intend[ed] to file a supplement to their Motion for Preliminary Injunction or intend[ed] to convert that Motion to a Motion for Summary Judgment, which would result in the Motion for Preliminary Injunction being withdrawn; (3) a briefing schedule for Plaintiffs' Motion (either for Preliminary Injunction or for Summary Judgment) that would result in the Motion

being fully briefed by December 14, 2023; and (4) whether the set hearing [would] be for a preliminary injunction or on the final merits.

*Id.*

The parties filed a Joint Status Report (ECF No. 56) by the deadline. It was stricken, however, because Plaintiffs submitted a version of the document that Defendants had not seen, indicating the parties had not fully conferred on the relevant issues. *See* 11/21/2023 Minute Order, ECF No. 59. Three days ago, the parties submitted a revised Joint Status Report (ECF No. 62) that reveals the parties' additional efforts to come to an agreement. Nevertheless, the parties continue to disagree on the appropriate path forward.

Plaintiffs contend that no additional discovery is necessary and filed a Motion for Summary Judgment or, in the Alternative, for a Preliminary Injunction (ECF No. 61). Plaintiffs insist that "the material facts necessary to resolve [their] claims are not in dispute." Joint Status Report II at 13, ECF No. 62. If the Court disagrees, however, Plaintiffs request that a bench trial be conducted during the previously scheduled setting on December 19, 20, and 21, 2023. *Id.* at 13-14.

In significant respects, Defendants' proposal aligns with Plaintiffs'—Both parties agree that a final merits determination, at least in part, may occur by the end of the year. Allegations in the Amended Complaint have caused Defendants to believe that it is necessary to conduct broad discovery on all the preschools operated by parishes within the Archdiocese. "The Archdiocese oversees, guides, and supports 36 preschools," including those operated by the parishes named as Plaintiffs in this case (the "Named Preschools") and those operated by other parishes within the Archdiocese (the "Unnamed Preschools"). Am. Compl. ¶¶ 67, 99, ECF No. 30. "Each parish within the Archdiocese is a separately incorporated legal entity under Colorado law, subject to the control and direction of its pastor." Joint Status Report II at 4. Yet, the Amended Complaint

alleges that the Archdiocese "speaks for and advances the interests of all of [its] Catholic schools and preschools." *Id.* ¶ 100. Its use of the collective "Plaintiffs" and description of the Archdiocese's conduct also appears to indicate that the Archdiocese is representing the interests of the Unnamed Preschools in this case.

Defendants consequently propose that the merits determination on the claims of the Named Preschools be bifurcated from a determination on the Archdiocese's claims involving the Unnamed Preschools. Defendants urge the Court to put off deciding the final merits of the latter claims until mid-2024 so that sufficient discovery can be completed.

Plaintiffs assert that Defendants' proposal "fundamentally misunderstands Plaintiffs' claims." Joint Status Report II at 2. According to Plaintiffs:

> The Archdiocese, as a result of the UPK Colorado non-discrimination provisions it challenged, has been required to direct its 36 Archdiocesan preschools not to participate in UPK Colorado. The Archdiocese therefore seeks a ruling from this Court that would allow it to withdraw that prohibition, allowing any Archdiocesan preschool that would like to participate in UPK Colorado to be able to do so.

*Id.* at 2-3 (citation omitted). The parties' positions highlight that the interests represented by the Archdiocese in this case are unclear and must be defined for the case to proceed.

In the Joint Status Report, the parties also disagree on whether expert testimony should be allowed. Defendants seek to "present expert testimony to place sexual orientation and gender identity protections in their proper context . . . and [to] unpack[] the State's interest in preventing the pain and loss and long-term trauma suffered by families when schools (or governments) intrude into this sensitive space." *Id.* at 11. Plaintiffs argue that expert testimony is unnecessary and that Defendants did not disclose their expert in time for Plaintiffs to depose the witness or challenge the admissibility of the witness's opinions. *Id.* at 7.

Accordingly, there are four distinct matters that I must address to provide a plan for how this case will move forward: (1) the timing of future proceedings, (2) the scope of the litigation, (3) the propriety of expert testimony, and (4) whether a bench trial should be held or the case should be decided applying the summary judgment standard.

*Timing of Proceedings*

My prior Order on the initial discovery in this case indicated that if Plaintiffs chose to convert their Motion for Preliminary Injunction to one for summary judgment, that "would result in the Motion for Preliminary Injunction being withdrawn." Order Re: Initial Discovery at 2. Plaintiffs have filed a 50-plus-page Motion for Summary Judgment that, in the alternative, seeks a preliminary injunction. Based on the filing of the Motion for Summary Judgment, the original Motion for Preliminary Injunction should be withdrawn. However, I will allow Plaintiffs to pursue relief as they see fit. While a request for a preliminary injunction ordinarily would receive priority on my docket, the time needed to adjudicate any matter is directly related to the materials submitted, including the plethora of citations contained in the parties' briefs and the work to be done before any ruling is possible. I am appalled at the effrontery of Plaintiffs' counsel in filing over 500 pages while at the same time asking for expedited decisions. I follow the law and the facts to the proper conclusion. Doing so demands that I review all the submissions, and I will not be rushed to judgment.

For this reason and the ones that follow, I vacate the setting presently scheduled for December 19, 20, and 21, 2023, and reset it for January 2, 3, and 4, 2024.

*The Scope of the Litigation*

As mentioned, the inclusion of the Archdiocese as a Plaintiff has muddied the boundaries of this litigation. Plaintiffs bring as-applied constitutional claims. *See* Am. Compl. 35-36 (seeking declaratory and injunctive relief in relation to "Plaintiffs" only). The specific interests Plaintiffs represent thus dictate the scope of this litigation. Plaintiffs' filings in this case suggest both that the Archdiocese brings its claims on behalf of its own interests as well as those of the 36 preschools within the Archdiocese. To proceed with this case, I must assess the Archdiocese's specific claims and determine the extent to which the Archdiocese has standing to assert those claims.[1]

In the Amended Complaint, Plaintiffs do not explicitly articulate the basis for the Archdiocese's standing. And, in their Motion to Dismiss, Defendants do not present arguments focused on the Archdiocese. As noted above, however, Plaintiffs indicate in the revised Joint Status Report that the Archdiocese's claims arise from their allegation that it was "required to direct its 36 Archdiocesan preschools not to participate in UPK Colorado." Joint Status Report II at 2; *see also id.* at 6 (describing the Archdiocese's injury as "the fact that it had to issue a blanket instruction prohibiting all 36 of its schools from participating" in the Program). The Amended Complaint and Plaintiffs' other filings, however, suggest that the Archdiocese brings its claims as an agent or representative of the Unnamed Preschools. *See, e.g.*, Am. Compl. ¶ 100 (asserting that the Archdiocese "speaks for and advances the interests of all of [its] Catholic schools and preschools"); *id.* ¶¶ 171-72 (alleging the Archdiocese "provide[s] education" and "hire[s] teachers"); *id.* ¶ 173 (citing the interests of the Archdiocese's preschools); *id.* ¶ 176

---

[1] Defendants have filed a Motion to Dismiss (ECF No. 38) arguing that Plaintiffs do not have standing to bring their claims and that Defendants' claims are not ripe for adjudication. I intend to rule on that motion in full in a future order.

(stating "Plaintiffs" must agree to UPK Colorado's nondiscrimination requirements); *id.* ¶¶ 190-91 (suggesting the Archdiocese selects preschool teachers and administrators); *id.* ¶¶ 200-01 (implying that the Archdiocese operates preschools); *id.* ¶ 234 (indicating that the Archdiocese "admit[s] families and hire[s] faculty"); Mot. for Prelim. Inj. at 8 (requesting that the Court "preliminarily enjoin Defendants from denying Plaintiffs participation in [UPK Colorado]" even though the Archdiocese itself would not participate in the Program); Am. Compl. at 35-36 (seeking similar injunctive relief on a permanent basis and declarations that UPK Colorado's nondiscrimination requirements "violate the First Amendment to the United States Constitution as applied to Plaintiffs' religious exercise," despite the fact that there is no indication the Archdiocese is or would be subject to the requirements).

I am inclined to find the Archdiocese has not demonstrated it has standing to assert its claims as they are framed. Because of the parties' lack of precision, however, additional briefing would be beneficial. As such, I direct both parties to submit supplemental briefing on Defendants' Motion to Dismiss. In their briefing, the parties should discuss the Archdiocese's potential standing as an agent or representative of the Unnamed Preschools, any basis for it to independently have standing, and any prudential doctrine that might counsel against the exercise of jurisdiction. The plan I set out below assumes that the challenges brought in this case relate to UPK Colorado's nondiscrimination requirements as they are applied to the Named Preschools only. If the Archdiocese demonstrates that it has standing and that consideration should be given to application of the requirements to the Unnamed Preschools, I will permit an additional period of discovery and a second bench trial on those merits.

*Expert Witnesses*

Regarding expert witnesses, I find the expert testimony described by Defendants is potentially relevant and helpful for determining the questions that must be resolved in this case. Besides the initial fact discovery deadline of December 1, 2023, no deadline was provided for expert witness disclosures. If Defendants provide an expert disclosure by December 5, 2023, it will be considered timely. Plaintiffs should be given the opportunity to respond to that disclosure in the manner they deem appropriate. As a result, Plaintiff is permitted to depose any expert outside the fact discovery period, may file a motion challenging any expert opinions on or before December 11, 2023, and will be subject to a rebuttal expert deadline of December 26, 2023.[2]

*Bench Trial vs. Summary Judgment*

Lastly, the January setting will be a bench trial limited to the claims asserted by the Named Preschools and Plaintiffs Daniel and Lisa Sheley. In the revised Joint Status Report, Defendants acquiesce to having the final merits of these claims resolved in short order. Plaintiffs contend I should decide the merits of the case on their Motion for Summary Judgment, without conducting a bench trial. From the evidence presently submitted, however, I believe that at least some material facts are in dispute. Consequently, I intend to conduct a bench trial and rule as a matter of law where appropriate. The parties should consult my Civil Pretrial and Trial

---

[2] Recent amendments to Federal Rule of Evidence 702 take effect tomorrow, December 1, 2023. The Court and counsel will be governed accordingly.

Procedures Memorandum on the District of Colorado's website, including the section on the use of deposition testimony.[3]

*Conclusion*

This case will, therefore, proceed as follows: The parties will complete fact discovery this week, expert discovery will be permitted as stated above, and a bench trial on the final merits will be held on January 2, 3, and 4, 2024, beginning at 9:30 a.m. each day. Defendants are DIRECTED to file, on or before December 8, 2023, a supplemental brief to their Motion to Dismiss that specifically addresses the Archdiocese. Plaintiffs are DIRECTED to file a related supplemental brief on or before December 15, 2023. Defendants are further DIRECTED to file, on or before December 18, 2023, a Response to Plaintiffs' Motion for Summary Judgment, incorporating any trial brief, as well as any arguments under Federal Rule of Civil Procedure 12(b)(6) and any cross-motion for partial summary judgment.[4] Plaintiffs are further DIRECTED to file, on or before December 29, 2023, a Reply to Defendants' submission, incorporating any trial brief of their own.[5] Proposed Findings of Fact and Conclusions of Law will be due ten days after the conclusion of the bench trial. The previously scheduled setting for December 19, 20,

---

[3] Since the timeline for the trial has been expedited, the parties should generally follow the deadlines provided in my Procedures Memorandum for hearings, unless I order otherwise.

[4] I am allowing the inclusion of motions in Defendants' Response as an exception to the Local Rules.

[5] In their future filings, the parties must refer to the claims in the Amended Complaint and the individual parties with specificity. Generic statements about "Plaintiffs" will not be permitted. The parties must clearly argue which party should or should not succeed on which claim and on what basis. Additionally, any "incorporation by reference" of briefs, motions, or other non-pleadings into future filings will be stricken and not considered. *See* Fed. R. Civ. P. 7(a) & 10(c); *Atl. Richfield Co. v. NL Indus., Inc.*, 20-cv-00234-NYW-KLM, 2023 WL 3096809, at *4 (D. Colo. Apr. 26, 2023).

and 21, 2023, is VACATED, and Plaintiffs' initial Motion for Preliminary Injunction (ECF No.

32) is DENIED AS MOOT.


     DATED this 30th day of November, 2023.

_____
JOHN L. KANE
SENIOR U.S. DISTRICT JUDGE