# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-02079-JLK

ST. MARY CATHOLIC PARISH IN LITTLETON; ST. BERNADETTE CATHOLIC PARISH IN LAKEWOOD; LISA SHELEY; DANIEL SHELEY; and THE ARCHDIOCESE OF DENVER,

      Plaintiffs,

v.

LISA ROY, in her official capacity as Executive Director of the Colorado Department of Early Childhood; and DAWN ODEAN, in her official capacity as Director of Colorado's Universal Preschool Program,

      Defendants.

## DECLARATION OF VIRGINIA CARRENO IN SUPPORT OF DEFENDANTS' RULE 56(d) MOTION

I, Virginia Carreno, pursuant to 28 U.S.C. § 1746, do depose and state as follows:

1. I am a Second Assistant Attorney General in the Colorado Department of Law.

2. I represent Dr. Lisa Roy in her official capacity the Executive Director of the Colorado Department of Early Childhood ("Department") and Dawn Odean in her official capacity as the Director of the Universal Preschool Program ("UPK Program" or "Program") in the above-captioned matter. I also represent them in *Darren Patterson Christian Academy v. Roy et al.*, No. 1:23-cv-01557-DDD-STV.

3. We intend to conduct discovery in this case that will bring to light facts essential to this Court's ultimate ruling and will demonstrate why Plaintiffs are not entitled to summary judgment.

4. Defendants' Motion to Dismiss (Doc. 38) and Supplemental Brief to Their Motion to Dismiss (Doc. 72) are still pending. Should the Motion be denied, Defendants intend to seek



discovery into the 34 preschools under control of Plaintiff Archdiocese of Denver that are not named parties in this case ("Unnamed Preschools").

5.  If the Archdiocese remains a plaintiff, Defendants plan to seek discovery into the populations, policies, and enrollments of the Unnamed Preschools. Defendants currently lack information as to:

    i. Whether the Unnamed Preschools have the desire to participate in the UPK Program;

    ii. The dress codes of the Unnamed Preschools and whether those dress codes are gender-specific;

    iii. The layouts of the Unnamed Preschools and whether there are gender-specific or segregated bathroom facilities at the preschool level;

    iv. The enrollment numbers of the Unnamed Preschools for the last ten years;

    v. The handbooks and other documents distributed to parents for the Unnamed Preschools; and

    vi. Any grants or programs with nondiscrimination provisions entered into by the Unnamed Preschools.

6.  Discovery into these matters is relevant to whether the Unnamed Preschools want to participate in the UPK Program and whether an actual case or controversy exists.

7.  Defendants took steps to obtain this discovery. Specifically, Defendants made numerous requests to the Archdiocese to obtain discovery about the Unnamed Preschools, and the Archdiocese refused to provide it on the grounds that it had no legal control over the Unnamed Preschools. Doc 62 at 4-5.

8.  Defendants also lack information about the about the six Catholic Charities preschools ("Catholic Charities Preschools") that are participating in the UPK Program. Doc. 47-1 at ¶ 4. The Archdiocese claims that all Archdiocese of Denver Catholic preschools are "categorically"

2

excluded from participation in the UPK Program, Doc. 30 ¶ 7, yet it concedes that the Catholic Charities Preschools are *already* participating in the UPK Program. Moo Tr. at 75:20-23 (Ex. 2 to Response to MSJ). The Archdiocese has not produced documents regarding the Catholic Charities Preschools and their participation in the UPK Program, despite the Archdiocese admissions during depositions that these preschools are "ultimately subject to the authority of the Archbishop" and "the Archbishop is responsible for Catholic Charities as an ecclesiastical entity" over which the Archdiocese holds ultimate direction. *Id.* at 71:8-72:1; 79:12-4. Some of these preschools are even located on Archdiocese parish properties. *Id*. at 79:15-17. Further, the Archdiocese's designated 30(b)(6) witness was not adequately prepared to speak about Catholic Charities and their participation in the UPK Program even though Defendants provided proper notice of this topic in their 30(b)(6) deposition notice. Dep. Notice to Archdiocese at 3 (attached as Exhibit A). In fact the 30(b)(6) witness identified a different person (Keith Parsons, the Chief Operating Officer of the Archdiocese), who was not designated by the Archdiocese, as best informed to speak about the Catholic Charities Preschools. Moo Tr. at 17:7-20; 18:2-7; 76:13-20.

9.      Defendants also lack discovery into certain aspects of the two named preschools in this lawsuit, St. Mary Catholic Parish in Littleton ("St. Mary") and St. Bernadette Catholic Parish in Lakewood ("St. Bernadette") (collectively, "Plaintiff Preschools"). The designated Rule 30(b)(6) witnesses for the Plaintiff Preschools both stated that they were not the main decision-makers for the preschools and named the parish pastors as the people with decision-making authority. Coats Tr. at 25:3-5 (Ex. 16 to Response to MSJ) (St. Bernadette pastor has final say over the "day to day" of the school); Seul Tr. at 60:22-61:25 (Ex. 17 to Response to MSJ) (preschool director is at the "bottom of the food chain" and St. Mary pastors make final decisions). Neither of these potential witnesses were disclosed in Plaintiffs' Initial Disclosures on September 25, 2023.

10.     Plaintiffs did not designate the pastors of the Plaintiff Preschools as witnesses on any Rule 30(b)(6) topic and did not disclose either of these witnesses in their Initial Disclosures or

Supplemental Disclosures. *See* Plaintiffs' Initial Disclosures attached as Exhibit B. Due to time constraints and the fact that Defendants were only able to depose five witnesses due to discovery limits, Defendants were unable to take depositions of the pastors of the Plaintiff Preschools.

11.     The 30(b)(6) witnesses for the Archdiocese and St. Bernadette also identified an additional person with knowledge about the Plaintiff Preschools — Abriana Chilelli, an Archdiocese employee who is now the acting superintendent of "Archdiocese-supervised" Catholic schools. Ms. Chilelli, was not named in Plaintiffs' Initial Disclosures, however, in their Supplemental Disclosures just filed on December 12, 2023, Plaintiffs have identified her as the person with direct supervisory authority over St. Mary and St. Bernadette. *See* Supplemental Disclosures attached as Exhibit C. Given that Defendants only recently learned about Ms. Chilelli's role and her knowledge regarding the Plaintiff Preschools, Defendants were not able to depose her. Given time, Defendants would depose Ms. Chilelli to explore her knowledge of the Plaintiff Preschools, the Archdiocese instructions to its supervised preschools, and her knowledge of any approved curricula for preschoolers.

12.     Defendants are also missing documents that they requested from Plaintiffs. During depositions, Defendants learned that Plaintiffs did not produce all documents regarding grants or funding received by the Plaintiff Preschools.  Moo Tr. at 88:3-15; 228:21-25. Defendants have requested and Plaintiffs have refused to produce documents on additional grants obtained by Plaintiff Preschools and their contracts, which potentially include nondiscrimination provisions. Defendants are currently aware of the Denver Preschool Program ("DPP") and the Colorado Child Care Assistance Program ("CCCAP"). grants and those grants' non-discrimination language agreed to by the Plaintiff Preschools. *See* Doc. 38 at 14-15, Doc. 38-5 at ¶¶ 3-9.

13.     Defendants have made diligent efforts to obtain discovery from Plaintiffs during the time period allowed. Defendants have reviewed all documents produced by Plaintiffs, which mainly come from St. Mary. Plaintiffs produced few documents from St. Bernadette and none regarding

4

St. Bernadette's closure and staff turnover, which its Principal cited as a reason enrollment fluctuated and preschool students left in the middle of the school year. Coats Tr. at 74:11-21; 78:22-79:19; 96:2-97:14; 101:10-102:19. These statements directly contradict St. Bernadette's claims that it has suffered an injury as a result of the UPK Program in the form of decreased preschool enrollment for the 2023-2024 school year.

14. Given additional time, Defendants would take the depositions of the Plaintiff Preschool pastors, who the Plaintiff Preschools' 30(b)(6) witnesses identified as the people with knowledge about the parish population, school hiring, and the final decisions on enrollment. Coats Tr. at 25:3-5; Seul Tr. at 60:22-61:25. Defendants would also take the depositions of Keith Parsons, identified as the person knowledgeable about the Catholic Charities Preschools, and Abriana Chilelli, identified as the direct supervisor of the two Plaintiff Preschools.

15. In addition to obtaining fact discovery, Defendants moved quickly to obtain expert testimony in this case, retaining experts the week of November 27, 2023 and producing expert reports on December 8, 2023. Additional time will allow the Defendants to properly develop testimony from their experts and for their experts to prepare their reports and testimony more fully for trial.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 18th day of December, 2023.

/s/ Virginia Carreno
Virginia Carreno

<u>Exhibit List to Declaration of Virginia Carreno In Support of Defendants' Rule 56(d) Motion</u>

Ex. A: Deposition Notice of the Denver Archdiocese

Ex. B: Plaintiffs' Initial Rule 26 Disclosures

Ex. C: Plaintiffs' Supplemental Rule 26 Disclosures