St. Mary v. Roy 23-cv-02079

| # | Alleged Fact | A/D | Response | Evidence for Denial |
|---|---|---|---|---|
| | **A. Catholic education in the Archdiocese of Denver** | | | |
| 1 | The Archdiocese of Denver's Office of Catholic Schools oversees thirty-six parish and Archdiocesan preschools, including St. Mary Catholic Preschool and Wellspring Catholic Academy at St. Bernadette. Declaration of Elias Moo (filed Sept. 13, 2023), ECF No. 32-1 ¶¶ 4-8. | | Defendants can neither admit nor deny Paragraph 1 as Defendants are without sufficient information to form an opinion as to the oversight authority of the Archdiocese. As pointed out in the Court's November 30, 2023 Order, "the interests represented by the Archdiocese in this case are unclear." Doc. 65 at 4. | |
| 2 | Educating and forming students in the Catholic faith is the central mission of these schools. Declaration of Elias Moo (filed Sept. 13, 2023), ECF No. 32-1 ¶ 23. | | Defendants can neither admit nor deny Paragraph 2 as Defendants are without sufficient information to form an opinion as to the "central mission" of the Plaintiff and Unnamed Preschools. | |
| 3 | Plaintiffs St. Mary's and St. Bernadette's operate Catholic preschools to assist parents in providing a high-quality religious education to their children. Declaration of Elias Moo (filed Sept. 13, 2023), ECF No. 32-1 ¶ 4; Declaration of Tracy Seul (filed Sept. 13, 2023), ECF No. 32-14 ¶ 3; Declaration of Avery Coats (filed Sept. 13, 2023), ECF No. 32-16 ¶¶ 3, 10. | | Defendants can neither admit nor deny Paragraph 3 as Defendants are without sufficient information to form an opinion as to the motives of Plaintiff Preschools. Admit that representatives from Plaintiff Preschools stated in their 30 (b)(6) depositions that their schools are "ministries" of their parishes.  Coats Tr. at 25:10-19 (Ex. 16 to Defendants' Response to the MSJ). | |
| 4 | St. Mary's "aim is to form our preschoolers into 'saints, heroes, and | | Defendants can neither admit nor deny Paragraph 4 as Defendants are without | |

EXHIBIT
3

St. Mary v. Roy 23-cv-02079

| | | | |
|---|---|---|---|
| | geniuses.'" Declaration of Tracy Seul (filed Sept. 13, 2023), ECF No. 32-14 ¶ 14. | | sufficient information to form an opinion as to the motives of St. Mary. Admit that the quoted statement is in the declaration of Tracy Seul. Doc. 32-14 ¶ 3. | |
| 5 | St. Bernadette's preschool, Wellspring Catholic Academy, has as its mission "to offer our students, families, and community a Catholic education that invites all to Dig Deep, to uncover our precious gifts within a loving encounter with God, the 'source and author of life' (Acts 3:15)." Declaration of Avery Coats (filed Sept. 13, 2023), ECF No. 32-16 ¶ 5; Attachment A to Declaration of Avery Coats (filed Sept. 13, 2023), ECF No. 32-17. | | Defendants can neither admit nor deny Paragraph 5 as Defendants are without sufficient information to form an opinion as to the "mission" of St. Bernadette's preschool, Wellspring Catholic Academy. | |
| 6 | Both St. Mary's and Wellspring's preschools have attained four-star ratings (the second highest) from the State's Colorado Shines rating system. See Ex. 8 at 2, 6. | Admit | | |
| 7 | Plaintiffs Daniel and Lisa Sheley are St. Mary's parishioners who currently have a four- year-old in preschool at St. Mary's. Declaration of Daniel Sheley (filed Sept. 13, 2023), ECF No. 32-18 ¶ 6. | Admit | | |
| 8 | The Catholic Church imposes a general obligation on Catholic "[p]arents ... to | | Defendants can neither admit nor deny Paragraph 8 as Defendants are without | |

St. Mary v. Roy 23-cv-02079

| | | | |
|---|---|---|---|
| | entrust their children to those schools which provide a Catholic education." 1983 Code of Canon Law c. 798. They may refrain from doing so only "[i]f they are unable[.]" Id. | | sufficient information to form an opinion as to the "general obligations" of the Catholic Church or Catholic parents. Further, the 1983 Code of Canon Law c. 798 has not been provided to Defendants. | |
| 9 | The Sheleys believe they are "commanded by [their] faith to provide [their] children with a Catholic education." Declaration of Daniel Sheley (filed Sept. 13, 2023), ECF No. 32-18 ¶ 5. | | Defendants can neither admit nor deny Paragraph 9 as Defendants are without sufficient information to form an opinion as to the Sheleys' personal beliefs. | |
| 10 | Accordingly, they send their preschooler to a Catholic preschool. Because they have chosen a Catholic preschool rather than a secular one, they are losing out on roughly $600 per month in UPK Colorado benefits. Declaration of Daniel Sheley (filed Sept. 13, 2023), ECF No. 32-18 ¶ 6. | | Defendants can neither admit nor deny Paragraph 10 as Defendants are without sufficient information to form an opinion as to the Sheleys' personal motives. Paragraph 10 also misstates the record, specifically Ms. Sheley's deposition.  Ms. Sheley admitted to receiving several tuition discounts due to her being an employee of St. Mary and having multiple children in the school. Sheley Tr. at 26: 17-21 (Ex. 18 to Defendants' Response to the MSJ). Her employee discount is about 50%. Id. at 32: 17-20.  Ms. Sheley could not remember what she and husband pay for tuition. Id. at 32: 11-12.  Additionally, Plaintiffs have not provided the calculations how they get to the number of $600 a month in any pleading, declaration, or deposition. Declaration of Daniel Sheley (Doc. No. 32-18). | |

St. Mary v. Roy 23-cv-02079

| 11 | The thirty-six preschools of the Archdiocese of Denver, including St. Mary's and Well- spring, are subject to the Archdiocese's doctrinal guidance on matters of faith and morals. Decla-ration of Elias Moo (filed Sept. 13, 2023), ECF No. 32-1 ¶¶ 7-8, 16-17. | | Defendants can neither admit nor deny Paragraph 11 as Defendants are without sufficient information to form an opinion about the Archdiocese's authority over Plaintiff Preschools regarding "matters of faith and morals." Additionally, as pointed out in the Court's November 30, 2023, Order, "the interests represented by the Archdiocese in this case are unclear." Doc. 65 at 4. | |
|---|---|---|---|---|
| 12 | The Archdiocese's Office of Catholic Schools helps to implement Catholic beliefs by, among other things, offering guidance on matters of faith and morals. This includes providing Archdiocesan schools with the Archdiocese's "Statements of Community Belief" to use when entering into employment contracts, see Declaration of Elias Moo (filed Sept. 13, 2023), ECF No. 32-1 ¶¶ 7-8, 16-17; providing draft contracts for school staff (including preschool teachers), id. ¶ 12; providing courses of study and curriculum guides for mandatory use in Archdiocesan schools, id. ¶ 17; and providing ongoing tools and guidance to Archdiocesan schools as they carry out their religious mission, id. ¶¶ 13-14. | | Defendants can neither admit nor deny Paragraph 12 as Defendants are without sufficient information to form an opinion about the Archdiocese's authority over the Plaintiff Preschools or the Unnamed Preschools regarding "matters of faith and morals." Additionally, as pointed out in the Court's November 30, 2023 Order, "the interests represented by the Archdiocese in this case are unclear." Doc. 65 at 4. | |
| 13 | The Catholic Church teaches that the Church "has been sent out by Christ on | | Defendants can neither admit nor deny Paragraph 13 as Defendants are without | |

St. Mary v. Roy 23-cv-02079

| | | | |
|---|---|---|---|
| | a mission to the whole of the human race," and that "[a]ll" are "called to belong to the new People of God." Catechism of the Catholic Church ¶ 831. | | sufficient information to form an opinion as to the religious beliefs of the Catholic Church. Additionally, the Catechism of the Catholic Church has not been provided. | |
| 14 | The Catholic Church opposes "unjust discrimination" of all types. Id. ¶ 2358. | | Defendants can neither admit nor deny Paragraph 14 as Defendants are without sufficient information to form an opinion as to the religious beliefs of the Catholic Church. | |
| 15 | The Catholic Church teaches that sexual acts outside of a marriage between one man and one woman are morally wrong and do not serve the good of the person or society, id. ¶¶ 1601, 2390; as well as that biological sex is a gift from God that cannot be "separated" from "gender" and should be "accep[ted] and respect[ed] as it was created," Pope Francis, Apostolic Exhortation Amoris Laetitia, ¶ 56 (2016). | | Defendants can neither admit nor deny Paragraph 15 as Defendants are without sufficient information to form an opinion as to the religious beliefs and teachings of the Catholic Church. Additionally, the cited documents have not been provided. | |
| 16 | The Catholic Church maintains that conveying these teachings is especially important in schools, which are "the principal assistance to parents in" forming Catholic children. 1983 Code of Canon Law c. 796 § 1; accord, e.g., Vatican Congregation for Catholic Education, "Male and Female He Created Them": Towards a Path of Dialogue on the Question of Gender | | Defendants can neither admit nor deny Paragraph 16 as Defendants are without sufficient information to form an opinion as to the religious beliefs and teachings of the Catholic Church. Additionally, the cited documents have not been provided. | |

St. Mary v. Roy 23-cv-02079

| | | | |
|---|---|---|---|
| | Theory in Education (2019); Attachment B to Declaration of Elias Moo (filed Sept. 13, 2023), ECF No. 32- 3 at 7-8. | | |
| 17 | In accordance with the Church's teachings, the Archdiocese has provided extensive guidance on issues concerning the "human person and sexual identity," issuing an eighteen-page document explaining the Church's beliefs and providing guidance for Catholic schools. See Attachment E to Declaration of Elias Moo (filed Sept. 13, 2023), ECF No. 32-6. | | Defendants can neither admit nor deny Paragraph 17 as Defendants are without sufficient information to form an opinion as to the religious beliefs, teachings and guidance of the Catholic Church.   Use of the word "extensive" is also vague. |
| 18 | The Archdiocese defines "parishioners" at Catholic parishes to include "Catholic individuals residing within the geographic boundaries of a parish or who have registered with the parish, typically by submitting basic demographic information to the parish's office." Ex. 7 at 10 (Interrogatory No. 10). | Admit | |
| 19 | The Archdiocese operates 148 parishes, stations, or mission parishes but has only 36 pre- schools. Declaration of Elias Moo (filed Sept. 13, 2023), ECF No. 32-1 ¶ 29. | | Defendants can neither admit nor deny Paragraph 19 as Defendants are without sufficient information to form an opinion about the Archdiocese's "operation" as this term is not defined. Additionally, as pointed out in the Court's November 30, 2023 Order, "the interests represented by the Archdiocese in this case are unclear." Doc. 65 at 4. Further, according to Elias |

St. Mary v. Roy 23-cv-02079

| | | | | |
|---|---|---|---|---|
| | | | Moo's Declaration, "[t]here are thirty-six Catholic preschools in the Archdiocese. There are thirty-four parish preschools, each of which is a ministry of its affiliated Catholic parish. There are also two regional Catholic schools that have a preschool program. These two regional Catholic schools are not affiliated with a specific parish. Each parish or regional school is a separately incorporated legal entity distinct from the Archdiocese." Doc. 62-1 ¶ 4. (emphasis added). | |
| 20 | St. Mary's, Wellspring, and the Archdiocese believe that "[b]ecause Jesus asked the Church to form disciple-students, the school is the natural place for discipleship, in learning the Christian faith and forming habits of the Christian life." Attachment H to Declaration of Elias Moo (filed Sept. 13, 2023), ECF No. 32-9 at 8. The Catholic school is therefore a "place of evangeliza- tion and catechesis, existing to equip students to go forth proclaiming the marvelous works of God." Id. at 9. Catholic preschools in particular provide "preparation for further formal instruction," planting the seeds of discipleship by creating a faith-filled and Christ-centered community. | | Defendants can neither admit nor deny Paragraph 20 as Defendants are without sufficient information to form an opinion as to the religious beliefs or teachings of the Archdiocese or Plaintiff Preschools. | |

St. Mary v. Roy 23-cv-02079

| | | | | |
|---|---|---|---|---|
| | Declaration of Elias Moo (filed Sept. 13, 2023), ECF No. 32-1 ¶¶ 20-21. | | | |
| 21 | St. Mary's, Wellspring, and the Archdiocese believe that Archdiocesan preschools can fulfill this mission only if those who lead the community are properly formed in the Catholic faith and only if those who make up the community are open and receptive to the teaching of the faith. Declaration of Elias Moo (filed Sept. 13, 2023), ECF No. 32-1 ¶¶ 24-26; Declaration of Tracy Seul (filed Sept. 13, 2023), ECF No. 32-14 ¶ 17. | | Defendants can neither admit nor deny Paragraph 21 as Defendants are without sufficient information to form an opinion as to the religious beliefs or teachings of the Archdiocese or Plaintiff Preschools. | |
| 22 | Accordingly, the Archdiocese requires that those who teach and pass on the Catholic faith, including all preschool teachers, strive to uphold Catholicism's tenets in both word and deed and meet the requirements of provisional catechetical certification. Declaration of Elias Moo (filed Sept. 13, 2023), ECF No. 32-1 ¶¶ 24-26; Declaration of Tracy Seul (filed Sept. 13, 2023), ECF No. 32-14 ¶ 17. | | Defendants can neither admit nor deny Paragraph 22 as Defendants are without sufficient information to form an opinion as to the religious beliefs or teachings of the Archdiocese or the Catholic faith. | |
| 23 | St. Mary's, Wellspring, and the Archdiocese believe that Archdiocesan preschools must prioritize admitting Catholic families active in Archdiocesan parishes, including those in parishes other than the parish sponsoring a | | Defendants can neither admit nor deny Paragraph 23 as Defendants are without sufficient information to form an opinion as to the religious beliefs of the Archdiocese or Plaintiff Preschools. | |

St. Mary v. Roy 23-cv-02079

| | | | |
|---|---|---|---|
| | particular preschool. Declaration of Elias Moo (filed Sept. 13, 2023), ECF No. 32-1 ¶ 28. | | | |
| 24 | Plaintiffs believe that parents and families are partners in fulfilling the Catholic educational mission. Attachment B to Declaration of Elias Moo (filed Sept. 13, 2023), ECF No. 32-3 at 7. | | Defendants can neither admit nor deny Paragraph 24 as Defendants are without sufficient information to form an opinion as to the religious beliefs of the Plaintiffs. | |
| 25 | Accordingly, "all Catholic school families must understand and display a positive and supportive attitude toward the Catholic Church, her teachings, her work, and the mission of the Catholic school." Attachment B to Declaration of Elias Moo (filed Sept. 13, 2023), ECF No. 32-3 at 8. | | Defendants can neither admit nor deny Paragraph 25 as Defendants are without sufficient information to form an opinion as to the religious beliefs of the Plaintiffs or Catholic schools. | |
| 26 | St. Mary's, Wellspring, and the Archdiocese believe that without this common understanding, Catholic schools could not fulfill their role of supporting parents as the primary educators of their children and of forming faith-fostering communities of disciples. Attachment H to Declaration of Elias Moo (filed Sept. 13, 2023), ECF No. 32-9 at 9-10, 29-30; see also Attachment E to Declaration of Elias Moo (filed Sept. 13, 2023), ECF No. 32-6 at 4 | | Defendants can neither admit nor deny Paragraph 26 as Defendants are without sufficient information to form an opinion as to the religious beliefs of the Archdiocese or Plaintiff Preschools. | |

St. Mary v. Roy 23-cv-02079

|  |  |  |  |
|---|---|---|---|
|  | (encouraging "partnership with parents"). |  |  |
| 27 | Therefore, St. Mary's, Wellspring, and the Archdiocese believe that Archdiocesan pre- schools must carefully consider whether admitting students or families who oppose Catholic teachings in word or deed will create intractable conflicts that hinder the school's mission. Declaration of Elias Moo (filed Sept. 13, 2023), ECF No. 32-1 ¶ 27. |  | Defendants can neither admit nor deny Paragraph 27 as Defendants are without sufficient information to form an opinion as to the religious beliefs of the Archdiocese or Plaintiff Preschools. Paragraph 27 is also vague as to what constitutes an "intractable conflict" |  |
| 28 | The Archdiocese insists that families demonstrate an openness to the Catholic faith because, when what is being taught in the classroom conflicts with the education and example in the home, the conflict can undermine the Catholic schools' mission. Attachment E to Declaration of Elias Moo (filed Sept. 13, 2023), ECF No. 32-6 at 15; see also Declaration of Elias Moo (filed Sept. 13, 2023), ECF No. 32-1 ¶ 27. |  | Defendants can neither admit nor deny Paragraph 28 as Defendants are without sufficient information to form an opinion as to the religious beliefs of the Archdiocese.  Paragraph 28 is also vague as to what constitutes "openness." |  |
| 29 | The Archdiocese believes that enrolling students and families who, in word or deed, oppose or contradict the teaching of the Catholic faith negatively impacts the education provided to other students and families who enroll in Catholic schools seeking a Catholic education. Attachment E to Declaration of Elias |  | Defendants can neither admit nor deny Paragraph 29 as Defendants are without sufficient information to form an opinion as to the religious beliefs of the Archdiocese. |  |

St. Mary v. Roy 23-cv-02079

| | | | | |
|---|---|---|---|---|
| | Moo (filed Sept. 13, 2023), ECF No. 32-6 at 9-17; see also Declaration of Avery Coats (filed Sept. 13, 2023), ECF No. 32-16 ¶¶ 22-26. | | | |
| 30 | Accordingly, at times Archdiocesan schools and preschools have had to make the difficult decision to encourage families to seek alternative options rather than enroll in their schools because admitting a particular family would "cause conflict and confusion within the school and within their family." Declaration of Avery Coats (filed Sept. 13, 2023), ECF No. 32-16 ¶ 26. | Deny | Deny.  According to Plaintiffs' Supplemental Discovery Responses, Plaintiffs "are not aware of any instances since January 1, 2018, in which they have denied an applicant's request, or a request from their family or guardian, to enroll in preschool because of the applicant's sexuality, sexual identity, sexual orientation, gender identity, religious beliefs or the sexuality, sexual identity, sexual orientation, gender identity, or religious beliefs of the applicant's family members or guardians." (Interrogatory Response #3). The Discovery Responses are attached to the Declaration of Virginia Carreno as Exhibit C. | Interrogatory Response #3 |
| 31 | These beliefs are articulated in the Archdiocese's document entitled "The Splendor of the Human Person: A Catholic Vision of the Person and Sexuality," which the Archdiocese promulgated in 2021. Declaration of Elias Moo (filed Sept. 13, 2023), ECF No. 32-1 ¶ 13; see generally Attachment G to Declaration of Elias Moo (filed Sept. 13, 2023), ECF No. 32-8. | | Defendants can neither admit nor deny Paragraph 31 as Defendants are without sufficient information to form an opinion as to the religious beliefs of the Archdiocese.  Paragraph 31 is also vague as to what they mean by "promulgate." | |

St. Mary v. Roy 23-cv-02079

| | | | |
|---|---|---|---|
| 32 | The Archdiocese has also issued guidance to its Catholic schools on how to implement these beliefs regarding gender, sexuality, and the human person. See Attachment E to Declaration of Elias Moo (filed Sept. 13, 2023), ECF No. 32-6. | | Defendants can neither admit nor deny Paragraph 32 as the term "guidance" is not defined and is vague. | |
| 33 | In accordance with this guidance, Archdiocesan schools use terminology consistent with Catholic teachings, Attachment E to Declaration of Elias Moo (filed Sept. 13, 2023), ECF No. 32- 6 at 2; use pronouns that correspond with biological sex, id. at 10; enforce dress code expectations corresponding to biological sex, id. at 11; and make changing and bathroom facilities available only in correspondence with biological sex, id. at 12. | | Defendants can neither admit nor deny Paragraph 33 as Defendants are without sufficient information to form an opinion as to "Catholic teachings." Further, Paragraph 33 is inconsistent with evidence regarding the enforcement of dress code expectations and changing and bathroom facilities. Ms. Seul testified that four out of the five preschool classrooms at St. Mary have one bathroom inside the classroom that "all genders" use, and both St. Mary and St. Bernadette allow all students to wear pants or shorts as per their dress code. Seul Tr. at 67: 7-13; 68: 6-12; 47: 5-8 (Ex. 17 to Defendants' Response to the MSJ). Finally, Plaintiffs have identified no circumstances where Plaintiff Preschools have been asked to use pronouns different from those that correspond with "biological sex." | |
| 34 | The Archdiocese also believes that "[s]ituations involving individuals should be addressed with pastoral care that is rooted in love and concern for the | | Defendants can neither admit nor deny Paragraph 34 as Defendants are without sufficient information to form an opinion | |

St. Mary v. Roy 23-cv-02079

| | | | |
|---|---|---|---|
| | person; pastoral care recognizes God's call to every baptized person to share in his eternal life and to follow the moral law as the way to happiness. 'A person's discomfort with his or her sex, or the desire to be identified as the other sex, is a complicated reality that needs to be addressed with sensitivity and truth. Each person deserves to be heard and treated with respect; it is our responsibility to respond to their concerns with compassion, mercy and honesty' (USCCB, 2017)." Attachment E to Declaration of Elias Moo (filed Sept. 13, 2023), ECF No. 32-6 at 3. | | as to the religious beliefs of the Archdiocese. | |
| 35 | "Neither of the Plaintiff schools has any history of a complaint from an LGBTQ family or other person for LGBTQ-based discrimination." Declaration of Dawn Odean (filed Oct. 6, 2023), ECF No. 38-1 ¶ 24. | Admit | | |
| 36 | And none of the other licensed Catholic preschools affiliated with the Archdiocese "has any history of a complaint from an LGBTQ family or other person alleging LGBTQ-based dis- crimination." Declaration of Dawn Odean (filed Oct. 6, 2023), ECF No. 38-1 ¶ 21. | | Admit in part to the quoted language in the Declaration of Dawn Odean. Deny as vague as to the non-quoted language. | |
| | **A. UPK Colorado** | | | |

St. Mary v. Roy 23-cv-02079

| 37 | In 2022, Colorado established a system of state funding for "universal" preschool to be administered by the newly created Department of Early Childhood. Colo. Rev. Stat. §§ 26.5-4-201, et seq. ("the statute"). This new program aims to make some "preschool services" free for all Colorado children, "regardless of their economic circumstances." Id. §§ 26.5-4-202(1)(a)(V), 26.5-4-204(1)(a). | | Paragraph 37 contains legal contentions rather than an undisputed fact to which Defendants can admit or deny. To the extent that a response is required, the statutory language speaks for itself. | |
|---|---|---|---|---|
| 38 | For the 2022-23 school year, the Department is reimbursing participating preschool providers for 15 hours of preschool per eligible child they enroll. This funding may be used "only to pay the costs of providing preschool services directly to eligible children enrolled by the preschool provider." Id. § 26.5-4-208(5). | | Paragraph 38 contains legal contentions rather than an undisputed fact to which Defendants can admit or deny. To the extent that a response is required, the statutory language speaks for itself. | |
| 39 | The Department agrees that UPK Colorado "provides a significant benefit for the families that do participate" in the program. Ex. 4 at 123:7-10. | Admit | | |
| 40 | The statute dictates that UPK Colorado use a mixed-delivery system. Colo. Rev. Stat. § 26.5-4-202(1)(a)(VI) ("Creating a statewide mixed delivery system of preschool providers to make preschool programming universally available to | | Paragraph 40 contains legal contentions rather than an undisputed fact to which Defendants can admit or deny. To the extent that a response is required, the statutory language speaks for itself. | |

St. Mary v. Roy 23-cv-02079

| | | | |
|---|---|---|---|
| | children throughout Colorado compounds the benefits for children who are in low-income families and increases the ultimate social and economic benefits of high-quality preschool programming for the state as a whole."); Ex. 4 at 19:8- 25, 37:14-39:25 (confirming that faith-based providers are part of the mixed delivery system). | | |
| 41 | The Department considers mixed delivery important "to ensure that families have choice and can find the just-right provider that fits for their family." Ex. 4 at 38:6-11. | Admit | |
| 42 | The statute directs the Department to develop "quality standards" with which preschool providers must comply. Colo. Rev. Stat. § 26.5-4-205(1)(a). It also directs the Department to include certain requirements in these quality standards. Id. § 26.5-4-205(2). | | Paragraph 42 contains legal contentions rather than an undisputed fact to which Defendants can admit or deny. To the extent that a response is required, the statutory language speaks for itself. |
| 43 | Among these requirements is the Equal Opportunity Mandate (or "Mandate"), which re- quires that "each preschool provider provide eligible children an equal opportunity to enroll and receive preschool services regardless of race, ethnicity, religious affiliation, sexual orientation, gender identity, lack of housing, income level, or disability, as | | Paragraph 43 contains legal contentions rather than an undisputed fact to which Defendants can admit or deny. To the extent that a response is required, the statutory language speaks for itself. |

St. Mary v. Roy 23-cv-02079

| | | | |
|---|---|---|---|
| | such characteristics and circum- stances apply to the child or the child's family." Id. § 26.5-4-205(2)(b). | | | |
| 44 | Plaintiffs previously referred to this provision as the Enrollment Mandate but, as Defend- ants emphasized in discovery, the Mandate extends to a preschool's operations, not just enrollment. Ex. 4 at 51:15-20; Colo. Rev. Stat. § 26.5-4-205(2)(b) (requiring "equal opportunity to enroll and receive preschool services") (emphasis added). | | Paragraph 44 contains legal contentions rather than an undisputed fact to which Defendants can admit or deny. To the extent that a response is required, the statutory language speaks for itself. | |
| 45 | By statute, the Department has the authority to grant exceptions from the quality standards Colo. Rev. Stat. § 26.5-4-205(1)(b)(II) ("If necessary to ensure the availability of a mixed delivery system within a community, the department may allow a preschool provider that does not meet the quality standards to participate in the preschool program for a limited time while working toward compliance with the quality standards; except that each preschool provider must meet all quality standards relating to health and safety as a condition of participating in the preschool program"). | | Paragraph 45 contains legal contentions rather than an undisputed fact to which Defendants can admit or deny. To the extent that a response is required, the statutory language speaks for itself. | |
| 46 | Preschools seeking to participate in UPK Colorado must sign a Program | Admit | | |

16

St. Mary v. Roy 23-cv-02079

| | | | |
|---|---|---|---|
| | Service Agreement. Ex. 3 at 2 (Request for Admission No. 1) (admitting "that in order to participate in the UPK Program, preschool providers must sign" Agreement); Ex. 4 at 24:25-25:3, 25:22-26:1, 46:16-22; Attachment A to Declaration of Tracy Seul (filed Sept. 13, 2023), ECF No. 32-15 (copy of Agreement). | | |
| 47 | Once they sign the Program Service Agreement, participating providers appear in the Department's Family Search and Application portal, allowing families to apply to use UPK program funds at their preschool. Ex. 4 at 24:14-24; Ex. 9. | Deny. | Paragraph 47 is vague as Plaintiffs have not defined what they mean by "participating." Further, a provider can create a profile before signing the Program Service Agreement. | |
| 48 | On the UPK Colorado portal, when a user is browsing preschool providers, the Department displays language reflecting when a provider has opted into one of the Department's exception criteria. Ex. 10. | | Admit that the UPK Colorado provider portal displays language reflecting when a provider has opted into one of the Department's matching preferences but deny the remainder of the statements in Paragraph 48. | |
| 49 | The Program Service Agreement, like the statute, includes the Equal Opportunity Mandate, requiring "each preschool provider [to] provide eligible children an equal opportunity to enroll and receive preschool services regardless of [the] … religious affiliation, sexual orientation, [or] gen-der identity" of "the child or the child's | | Admit that the 2023-2024 Program Service Agreement states: "Requirement that each preschool provider provide eligible children an equal opportunity to enroll and receive preschool services regardless of race, ethnicity, religious affiliation, sexual orientation, gender identity, lack of housing, income level, or disability, as such characteristics and | |

St. Mary v. Roy 23-cv-02079

| | | | | |
|---|---|---|---|---|
| | family." Attachment A to Declaration of Tracy Seul (filed Sept. 13, 2023), ECF No. 32-15 at 2; Ex. 4 at 51:1-18; see also Colo. Rev. Stat. § 26.5-4-205(2)(b). | | circumstances apply to the child or the child's family" but deny the remainder of the statements Paragraph 49. Program Service Agreement (Doc. 32-15) at 3. | |
| 50 | The Equal Opportunity Mandate requires participating preschool providers to both "enroll" eligible children and provide "preschool services" regardless of the listed characteristics in the Mandate. Attachment A to Declaration of Tracy Seul (filed Sept. 13, 2023), ECF No. 32-15 at 2; Ex. 4 at 51:1-18. | | Paragraph 50 contains legal contentions rather than an undisputed fact to which Defendants can neither admit nor deny. To the extent that a response is required, the statute and the Program Service Agreement speak for themselves. | |
| 51 | In addition, Paragraph 18(B) of the Program Service Agreement forbids "discriminat[ion] against any person on the basis of … religion, … sexual orientation, [or] gender identity." Attachment A to Declaration of Tracy Seul (filed Sept. 13, 2023), ECF No. 32-15 ¶ 18(B). | | Admit that the 2023-2024 Program Service Agreement contains the quoted language. Deny to the extent that the Department has disavowed enforcement of this provision to "permit religious organizations to hire co-religionists in accordance with federal law and protect religious organizations' employment decision about their ministerial employees in accordance with federal law."  Doc. 38-1 ¶16. | |
| 52 | Paragraph 18(B) covers enrollment, hiring, and operational decisions made by preschool providers. Attachment A to Declaration of Tracy Seul (filed Sept. 13, 2023), ECF No. 32-15 ¶ 18(B); Ex. 4 at 66:1-67:13, 69:12-15. | Deny | The Provider Service Agreement (Doc. 32-15 at 28 ¶ 18(B)) does not state that it "covers enrollment, hiring and operational decisions." The term "operational decisions" is also vague and not defined by the Plaintiffs. Further, none of the cited references to Ms. Odean's transcript (Doc. | Doc. 32-15 at 28 ¶ 18(B); Doc. 61-4 at 66:1-67:13, 69:12-15; Doc. 38-1 ¶16. |

St. Mary v. Roy 23-cv-02079

| | | | |
|---|---|---|---|
| | | 61-4 at 66:1-67:13, 69:12-15) indicate that the provision applies to "operational decisions." Finally, the Department has disavowed enforcement of Contractual Provision 18(B) to "permit religious organizations to hire co-religionist in accordance with federal law and protect religious organizations' employment decision about their ministerial employees in accordance with federal law."  Doc. 38-1 ¶16. | |
| 53 | If a prospective UPK Colorado provider cannot agree to the terms of the Program Services Agreement, it cannot participate in UPK Colorado. Ex. 4 at 71:11-72:2; Ex. 5 at 22:5-19. | Deny | The Department admits that if a prospective UPK Colorado provider chooses not to agree to the terms of the Program Service Agreement, it cannot participate in UPK Colorado. | |
| 54 | UPK Colorado changed how preschools enroll families in their programs. Previously, pre- schools had the ability to interview and accept applicants into their program. Testimony of Dawn Odean Before the Colorado Legislature Joint Budget Committee, 74th Gen. Assemb., First Reg. Sess.,  at  10:59:27-10:59:35 AM,  11:00:50-11:01:03 AM (Co.  Sept.  20,  2023), https://bit.ly/3FmLahg (UPK Colorado "represents more than a policy shift, it's an ongoing cultural shift for Colorado families and preschool providers alike."). | Deny | Paragraph 54 misstates the cited testimony of Dawn Odean. Further, UPK Providers have the ability to allow applicants to request tours and providers can "give families a sense of what it takes to enroll in your program" by listing their "enrollment steps" including any required paperwork as part of their enrollment process on the provider's UPK portal. UPK Colorado Provider Guide (Doc. 61-15) at 51 and 53. | UPK Colorado Provider Guide (Doc. 61-15) at 51 and 53. |

St. Mary v. Roy 23-cv-02079

| 55 | Now, most families enroll directly in UPK Colorado and then are matched with a preschool provider by the Department. Ex. 4 at 18:2-25, 22:4-19; Testimony of Dawn Odean Before the Colorado Legislature Joint Budget Committee, 74th Gen. Assemb., First Reg. Sess., at 10:59:27- 10:59:35 AM, 11:00:50-11:01:03 AM (Co. Sept. 20, 2023), https://bit.ly/3FmLahg. | Deny | Paragraph 55 misstates the cited testimony of Dawn Odean and misstates and oversimplifies how the matching system works. According to Ms. Odean's Declaration in Support of the Defendants' Motion to Dismiss, "Before a family is matched with a provider, the family chooses up to five providers and ranks them from one to five. The Department will only match children with one of the family's choices. If none of the family's choices are available, the family will have the opportunity to select additional providers for their child. Ultimately, families must accept a match before their children can be enrolled with a provider." Doc. 38-1 ¶ 9. | Doc. 38-1 ¶ 9. |
|----|----|----|----|----|
| 56 | If a preschool participating in UPK Colorado is matched by the Department with an eligible child, it may decline to enroll that child only if the preschool qualifies for a Department-approved exception from the Equal Opportunity Mandate. Ex. 4 at 23:13-23, 24:1-6, 29:23-30:8, 32:25-33:5. | Deny | Paragraph 56 misstates how the matching process works and inaccurately conflates a matching "preference" with an "exception" from the nondiscrimination provisions. There are no exceptions to the statutory antidiscrimination provision (what Plaintiffs refer to as the "Equal Opportunity Mandate"). | |
| 57 | In addition to matching, the Department also allows families to enroll directly in a pre- school by showing up at a preschool participating in UPK Colorado and asking for a UPK | | Deny in part as Paragraph 57 misstates the direct placement process. Admit that after the school year began, the Department started allowing some providers to utilize a direct placement process. Doc. 61-4 at 26:23-27:13. | |

St. Mary v. Roy 23-cv-02079

| | | | |
|---|---|---|---|
| | Colorado application. Ex. 4 at 27:17-25, 29:23-31:5. | | | |
| 58 | UPK Colorado's official Provider Guide lists the "exception criteria" preschools can use to either preference or deny proposed matches. Ex. 15 at 37. | | Deny as to the authenticity as the screenshots of ECF. No. 61-15 are not date or time stamped. Admit that for the 2023-2024 school year, providers were able to utilize certain preferences during the matching process. | |
| 59 | These exception criteria allow, among other things, faith-based providers to give preference to families who are part of their congregation, co-op programs to "require family participation," dual language providers to "screen[]" program participants, and "Head Start grantee" pro- grams to require families to "meet additional factors to enroll." Id.; see also Attachment L to Declaration of Moo (filed Sept. 13, 2023), ECF No. 32-13 at 2 ("faith-based providers can … decline a match from a family that is not part of the congregation"). | | Deny in part as the Department's preferences do not allow co-op programs to "require family participation." A "cooperative" preschool provider relies on families' volunteer time to support their programming. The Department does not control whether a program is a co-op or not and therefore, does not "allow" a co-op program to require volunteer hours of its parents. Additionally, the preference for dual language programs allows for dual-language programs or language immersion to reserve seats for children with proficiencies in certain languages. Similarly, the Head Start preference allows programs that receive Head Start grant money to reserve seats for children and families that meet the various requirements of the Head Start program. The Defendants admit that faith-based providers are permitted to give preference to members of their congregation during the matching process. | |

St. Mary v. Roy 23-cv-02079

| 60 | The Department allows preschools to self-select whether they are "faith-based," and the Department does not verify the provider's selection. Ex. 2 at 6 (Interrogatory No. 5) ("[T]he Department does not currently have 'criteria' to determine whether providers are faith-based providers. Providers are given an opportunity as part of the UPK provider registration process to indicate that they are a faith-based provider. If a provider indicates that they are a faith-based provider, the Defendants accept that provider designated themselves as 'faith-based' in good faith."). | Admit | | |
|---|---|---|---|---|
| 61 | The Department also allows preschools to preference or exclude applicants on the basis of disability. Ex. 4 at 99:1-25 ("My location only serves children with specific disabilities" …. "Are there any UPK providers that have that preference? A: We—we do."). | Deny. | Plaintiffs' use of an out of context quote ("My location only serves children with specific disabilities" …. "Are there any UPK providers that have that preference? A: We—we do.") is misleading. Ms. Odean went on to testify that school district providers have specific programs for specific needs that are aligned with their federal mandate, and that school district providers serve all children but may dedicate specific locations or classrooms to provide programs for children with specific needs. Odean deposition testimony (Doc. 61- 4) at 99:1-23. | (Doc. 61- 4) at 99:1-23. |

St. Mary v. Roy 23-cv-02079

| 62 | For example, Anchor Center for Blind Children, a UPK preschool provider, only serves children with vision impairments. See Ex. 6 at 32; Ex. 11 at 2 ("Your child must have a suspected or diagnosed vision impairment or dual sensory loss of vision and hearing."). | Deny. | Plaintiffs have not established the authenticity of these screenshots. | |
|----|----|----|----|----|
| 63 | The Department's proposed rulemaking incorporates the exception criteria. Ex. 12 at 6. | Admit. | Admit that the Department's proposed rulemaking incorporates the preferences that were utilized during the 2023-2024 school year matching process. | |
| 64 | The Department has permitted at least 1,091 preschools to take advantage of an exception criterion. Ex. 2 at 6 (Interrogatory No. 7); see generally Ex. 6 at 1-53. | | Deny in part as Paragraph 64 misstates the Defendants' response. Admit that 1,091 UPK Providers listed at least one of the preferences listed in the Department's UPK Provider Guide (Doc. 30-4) at 38. | |
| 65 | Separate and apart from the exception criteria, providers can also ask the Department for individualized exceptions from the Equal Opportunity Mandate. Ex. 4 at 91:15-21, 96:24-97:10, 98:10-24; Ex. 6 at 57 (describing the individualized exception request process), 82-87 (individualized exception spreadsheet). | | Deny in part as Paragraph 65 mischaracterizes the Department's practices, the referenced exhibits, and Ms. Odean's testimony. Admit that providers can submit a request to decline a match during the matching process. Deny that any providers may receive an exception from the statutory antidiscrimination provision (what the Plaintiffs refer to as "the Equal Opportunity Mandate"). | |
| 66 | This is done by submitting a request via an online form created by the Department. Ex. 6 at 54-55 (form to request individualized exception); Ex. 6 | | Deny in part as Paragraph 66 relies on the mischaracterizations in Paragraph 65. Admit that providers are able to submit an online request to utilize a preference during the matching process. | |

St. Mary v. Roy 23-cv-02079

| | | | |
|---|---|---|---|
| | at 64-65 (describing exception request process). | | | |
| 67 | The Department has granted at least one such exception to allow a preschool to give preference to the children of students at a high school associated with it. Ex. 4 at 90:4-17; Ex. 6 at 82- 83 (listing other approved individualized exceptions). | | Deny in part as Paragraph 67 relies on the mischaracterizations in Paragraphs 65 and 66. Admit that the Department has granted a provider school that has both a preschool and a high school the ability to utilize a preference in the matching process to allow it to give preference to the children of students enrolled in the high school. | |
| 68 | The Department's proposed regulations state that it is permissible to: "Withhold[] ... placements or availability of seats by an enrolling preschool provider of a student(s) with an Individualized Education Program (IEP) to ensure conformity with obligations incurred pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. section 1400 (2004), or the Exceptional Children's Education Act, Article 20 of Title 22, C.R.S." Ex. 12 at 6. | | Paragraph 68 contains legal contentions rather than an undisputed fact to which Defendants can admit or deny. To the extent that a response is required, the language of the proposed rule speaks for itself. | |
| 69 | The Department continues to consider case-by-case exceptions from the Equal Opportunity Mandate. Ex. 4 at 91:15-21. | Deny. | The Department does not permit any exceptions from what the Plaintiffs refer to as "the Equal Opportunity Mandate." According to the Department's proposed regulations, "[i]n utilizing these programmatic preferences, eligible preschool providers must still comply with rule section 4.109(B) [what the Plaintiffs | Doc. 61-12 at 6; Doc. 61-4 at 107:25-108:6 |

St. Mary v. Roy 23-cv-02079

| | | | refer to as 'the Equal Opportunity Mandate']." Doc. 61-12 at 6. Further, according to Ms. Odean's deposition testimony, "[b]ut also the rule doesn't allow us to go against what's in the law, and so that's why we have the 4.109(B)." Doc. 61-4 at 107:25-108:6 | |
|---|---|---|---|---|
| 70 | Both the exception criteria and the individualized exception process were created by the Department in response to requests from preschool providers. Ex. 4 at 35:12-20, 79:17-25; 97:2- 20. | Deny. | Plaintiffs mischaracterize the "exception criteria" and the "individualized exception process" as exceptions to the antidiscrimination requirement when they are instead departures from the default matching process. Admit that the preferences were created by the Department in response to requests from preschool providers. | |
| 71 | The Department's proposed regulations state that "[i]n utilizing these programmatic preferences, eligible preschool providers must still comply with rule section 4.109(B) [the Equal Opportunity Mandate]." Ex. 12 at 6; Ex. 4 at 107:25-108:6 ("But also the rule doesn't allow us to go against what's in the law, and so that's why we have the 4.109(B). So, yes, to the extent that we can be inclusive of a specific congregation that also falls in alignment of the law that's set forth for us."). | | Paragraph 71 contains legal contentions rather than an undisputed fact to which Defendants can admit or deny. To the extent that a response is required, the proposed rule language speaks for itself. | |
| 72 | The Department has also stated that it cannot—via rulemaking or discretionary | Admit | | |

25

St. Mary v. Roy 23-cv-02079

| | | | |
|---|---|---|---|
| | exception—contradict the language in Colo. Rev. Stat. § 26.5-4-205(2)(b) (that is, the Equal Opportunity Mandate). Attachment L to Declaration of Moo (filed Sept. 13, 2023), ECF No. 32-13 at 1 ("I do not have the authority to create an exception that excludes faith-based providers from the [Equal Opportunity Mandate]."); Ex. 4 at 121:10-122:3; Ex. 5 at 16:11-19; id. at 23:14-15 ("I cannot provide an exemption against what the law says."). | | |
| 73 | For the 2023-2024 school year, the Department has matched, and continues to match, families and preschools in rounds. Ex. 4 at 35:12-20. | Admit | |
| 74 | The Department continues to match families on a weekly basis. Ex. 4 at 33:14-19, 35:12- 20; Ex. 13 ("The matching process is now happening weekly. Families will be notified of their proposed matches every Friday and you will have until the following Thursday to accept or decline your match."). | Admit | |
| 75 | The Department retains discretion to perform additional matching cycles at any time. Ex. 4 at 35:25-36:15. | | Deny to the extent that Paragraph 75 mischaracterizes Ms. Odean's deposition testimony but admit that the Department is continuing to perform matching cycles to accomplish the least amount of | |

St. Mary v. Roy 23-cv-02079

| | | | | |
|---|---|---|---|---|
| | | | administrative burden on families and providers. Doc. 61-4 at 36:16-22. | |
| 76 | Preschools can enroll in UPK Colorado and start accepting matches at any time. Ex. 4 at 33:14-25. | | Deny to the extent that Paragraph 76 mischaracterizes Ms. Odean's deposition testimony but admit that the Department is continuing to allow providers to participate in UPK in the first year to be as inclusive as possible. Doc. 61-4 at 33:22-25. | |
| 77 | Preschools that enroll in UPK Colorado in the middle of a school year can start receiving UPK funding for their current class of four-year-old students once they complete the UPK enroll- ment process. Ex. 4 at 33:14-25; 36:24-37:4. | | Deny to the extent that Paragraph 77 mischaracterizes Ms. Odean's deposition testimony but admit that the Department is continuing to allow providers who choose to participate in UPK to start receiving UPK funding for their current class of four-year-olds if they qualify and complete the UPK enrollment process. Doc. 61-4 at 33:14-25; 36:24-37:4. | |
| 78 | The Department allows eligible children who are not yet enrolled in a preschool to enroll at any time throughout the school year. Ex. 4 at 27:15-22. | Admit | | |
| 79 | The Department also made program adjustments to allow for preschools to admit "walk- in[s]," also known as "direct enrollment[s]." Ex. 4 at 33:6-13. These families can approach a pre-school directly instead of going through the matching process. Id. | | Deny in part as Paragraph 79 misstates the direct placement process. Admit that after the school year began, the Department started allowing some providers to utilize a direct placement process. Doc. 61-4 at 26:23-27:13. | |
| | **B. UPK Colorado and Plaintiffs** | | | |

St. Mary v. Roy 23-cv-02079

| 80 | When UPK Colorado was announced, St. Mary's and Wellspring had initially hoped that the provisions of UPK Colorado would allow them to participate, and therefore started taking affirmative steps to do so. Declaration of Tracy Seul (filed Sept. 13, 2023), ECF No. 32-14 ¶¶ 33- 37; Declaration of Avery Coats (filed Sept. 13, 2023), ECF No. 32-16 ¶ 27; see also Declaration of Elias Moo (filed Sept. 13, 2023), ECF 32-1 ¶ 30. | | The Defendants can neither admit nor deny Paragraph 80 as the Defendants are without knowledge about what the Plaintiff Preschools hoped. Further, Plaintiffs have indicated that the reason they have not produced discovery documents for St. Bernadette is because only St. Mary "played an active role in the UPK Colorado rollout process." See Plaintiffs' position in the November 16, 2023 "joint" status report (Doc. 56) at 6. To the extent that response is required, the Defendants deny Paragraph 80. | |
|----|---|---|---|---|
| 81 | However, as details about the program solidified, the Archdiocese determined that its preschools could not in good conscience sign the Program Service Agreement or operate their pre- schools consistent with the requirements of the Agreement. Declaration of Elias Moo (filed Sept. 13, 2023), ECF No. 32-1 ¶ 32; Attachment J to Declaration of Elias Moo (filed Sept. 13, 2023), ECF No. 32-11 at 1-2. | | The Defendants can neither admit nor deny Paragraph 81 as the Defendants are without sufficient information to form an opinion as to the "conscience" of the Archdiocese. | |
| 82 | The Archdiocese communicated this guidance to all thirty-six Archdiocesan preschools. Attachment J to Declaration of Elias Moo (filed Sept. 13, 2023), ECF No. 32-11 at 1. | | Denied in part as "communicated" is vague and the Defendants are without sufficient information to know who the January 14, 2023 email (Doc. 32-11 at 1) referenced in Paragraph 82 was sent to. Admit that the Archdiocese sent an email on January 14, 2023 to "All Priests." | |

St. Mary v. Roy 23-cv-02079

| 83 | None of these thirty-six preschools participate in UPK Colorado. Supplemental Declaration of Elias Moo (filed Nov. 1, 2023), ECF 49-2 ¶ 8; Ex. 6 at 1-53 (Archdiocesan preschools not listed). | | Deny in part as "participate" is vague. Admit that neither Plaintiff Preschool nor any of the Unnamed Preschools have had students enrolled through the UPK Program. | |
| --- | --- | --- | --- | --- |
| 84 | The Equal Opportunity Mandate forbids "discrimination" on the basis of religion. Attachment A to Declaration of Tracy Seul (filed Sept. 13, 2023), ECF No. 32-15 at 2; Colo. Rev. Stat. § 26.5-4-205(2)(b). | | Paragraph 84 contains legal contentions rather than an undisputed fact to which Defendants can admit or deny. To the extent that a response is required, the statutory language speaks for itself. | |
| 85 | Paragraph 18(B) of the Program Service Agreement also forbids "discriminat[ion]" on the basis of religion. Attachment A to Declaration of Tracy Seul (filed Sept. 13, 2023), ECF No. 32- 15 at 27. | Deny | The Defendants have disavowed enforcement of this provision to "permit religious organizations to hire co-religionists in accordance with federal law and protect religious organizations' employment decision about their ministerial employees in accordance with federal law." Doc. 38-1 ¶16. | Doc. 38-1 ¶16. |
| 86 | The Equal Opportunity Mandate and Paragraph 18(B) therefore prevent Archdiocesan pre- schools from preferencing Catholic families who are not members of their congregation. Attachment A to Declaration of Tracy Seul (filed Sept. 13, 2023), ECF No. 32-15 at 2, 27; Colo. Rev. Stat. § 26.5-4-205(2)(b); Ex. 5 at 22:5-20. | | Paragraph 86 contains legal contentions rather than an undisputed fact to which Defendants can admit or deny. To the extent that a response is required, the statutory language speaks for itself. | |

St. Mary v. Roy 23-cv-02079

| 87 | The Department's "expectation would be that providers should not decline to enroll a student because of any of those identities, race, religious affiliation, gender identity, sexual orientation." Ex. 4 at 61:3-25. | Deny | Deny to the extent this mischaracterizes Dawn Odean's testimony by inaccurately describing the matching process. | |
|---|---|---|---|---|
| 88 | The Equal Opportunity Mandate forbids discrimination on the basis of sexual orientation or gender identity. Attachment A to Declaration of Tracy Seul (filed Sept. 13, 2023), ECF No. 32-15 at 2; Colo. Rev. Stat. § 26.5-4-205(2)(b). | | Paragraph 88 contains legal contentions rather than an undisputed fact to which Defendants can admit or deny. To the extent that a response is required, the statutory language speaks for itself. | |
| 89 | Paragraph 18(B) of the Program Service Agreement also forbids "discriminat[ion]" on the basis of sexual orientation or gender identity. Attachment A to Declaration of Tracy Seul (filed Sept. 13, 2023), ECF No. 32-15 at 27. | | Paragraph 89 contains legal contentions rather than an undisputed fact to which Defendants can admit or deny. To the extent that a response is required, the contractual language speaks for itself. Further, the Department has disavowed enforcement of this provision to "permit religious organizations to hire co-religionists in accordance with federal law and protect religious organizations' employment decision about their ministerial employees in accordance with federal law." Doc. 38-1 ¶16. | |
| 90 | The Equal Opportunity Mandate and Paragraph 18(B) prohibit Archdiocesan schools from taking into consideration whether a child or family is open to and supportive of the Catholic Church's | | Paragraph 90 contains legal contentions rather than an undisputed fact to which Defendants can admit or deny. To the extent that a response is required, the contractual and statutory language speak | |

St. Mary v. Roy 23-cv-02079

| | | | |
|---|---|---|---|
| | teachings—including its teachings on human sexuality—or whether personal circum- stances or actions would create intractable conflicts with what is being taught in the schools. Ex. 4 at 107:25-108:11; see, e.g., Declaration of Avery Coats (filed Sept. 13, 2023), ECF No. 32-16 ¶¶ 22-24; Declaration of Tracy Seul (filed Sept. 13, 2023), ECF No. 32-14 ¶¶ 25-31. | | for themselves. Further, Paragraph 90 contains vague language including "taking into consideration," "open to," "supportive," "personal circumstances or actions," and "intractable conflicts." | |
| 91 | Paragraph 18(B) forbids Archdiocesan preschools from requiring that those who teach the faith agree to live out those teachings in both word and deed. Attachment A to Declaration of Tracy Seul (filed Sept. 13, 2023), ECF No. 32-15 at 27; Ex. 4 at 65:13-66:5; Ex. 5 at 31:16-32:15. | | Paragraph 91 contains legal contentions rather than an undisputed fact to which Defendants can admit or deny. Further, the Defendants have disavowed enforcement of this provision to "permit religious organizations to hire co-religionists in accordance with federal law and protect religious organizations' employment decision about their ministerial employees in accordance with federal law."  Doc. 38-1 ¶16. | |
| 92 | This at times requires Archdiocesan preschools to consider the sexual orientation and gen- der identity of both prospective and currently enrolled families and their children. Attachment E to Declaration of Elias Moo (filed Sept. 13, 2023), ECF No. 32-6 at 9-17 (describing Archdiocesan school policies). | | Defendants can neither admit nor deny Paragraph 92 as Defendants are without sufficient information to form an opinion as to the religious beliefs or practices of the Archdiocese, Plaintiff Preschool or the Unnamed Preschools. | |

St. Mary v. Roy 23-cv-02079

| 93 | The Department cannot and will not grant an exception that allows the Archdiocese's pre- schools to operate in line with their beliefs about gender, sexuality, and the human person. Ex. 4 at 107:25-108:11 ("But also the rule doesn't allow us to go against what's in the law, and so that's why we have the 4.109(B). So, yes, to the extent that we can be inclusive of a specific congregation that also falls in alignment of the law that's set forth for us. Q. Okay. So no matter what, it can't be defined in a way that would run into the law about equal opportunity regardless of sexual orientation? A. That's my understanding."). | | Defendants can neither admit nor deny Paragraph 93 as Defendants are without sufficient information to form an opinion as to the religious beliefs of the Archdiocese, Plaintiff Preschool or the Unnamed Preschools. Further, the Defendants have disavowed enforcement of Contractual Provision 18(B) to "permit religious organizations to hire co-religionists in accordance with federal law and protect religious organizations' employment decision about their ministerial employees in accordance with federal law." Doc. 38-1 ¶16. | |
|---|---|---|---|---|
| 94 | A coalition of religious preschool providers that included the Archdiocese requested a religious accommodation from the State so that they could participate in UPK Colorado. Attachment K to Declaration of Elias Moo (filed Sept. 13, 2023), ECF No. 32-12 at 2. | Deny. | A coalition of religious preschool providers that included the Archdiocese requested an "exemption" from statute. Doc. 32-12 at 2. Further, faith-based religious providers can and are participating in the UPK Program. Doc. 32-13 at 2 (Dr. Roy's February 28, 2023 response advising that "faith-based providers can, and are encouraged to, participate in the UPK program. To that end, we created an interfaith working group, which meets weekly, to problem solve issues as they arise from within the | Doc. 32-12 at 2; Doc. 32-13 at 2. |

St. Mary v. Roy 23-cv-02079

| | | | | |
|---|---|---|---|---|
| | | | faith-based community and facilitate participation.") | |
| 95 | The head of the Department, Lisa Roy, responded that no religious accommodation would be provided and stated that the Department did not have the authority to provide such an accommodation. Attachment L to Declaration of Elias Moo (filed Sept. 13, 2023), ECF No. 32-13 at 1- 2; Ex. 5 at 23:10-15. | Deny | Defendant Dr. Roy stated that she does not have the authority to create an "exemption" from statute. Further, Dr. Roy advised that "faith-based providers can, and are encouraged to, participate in the UPK program. To that end, we created an interfaith working group, which meets weekly, to problem solve issues as they arise from within the faith-based community and facilitate participation." Doc. 32-13 at 2. Additionally, Dr. Roy stated that "faith-based providers that participate in the UPK Program may give preference to members of their congregation. Unlike most other UPK providers, faith-based providers can reserve all or a portion of their seats for their members, and decline a match from a family that is not part of the congregation. However, no provider may discriminate against children or families in violation of state statute." *Id*. at 3. | Doc. 32-13 at 2-3. |
| 96 | The Department maintains that it does not have the power to grant Plaintiffs a religious exception from the statutory nondiscrimination requirement, through rulemaking or otherwise. Ex. 5 at 16:6-19. | Deny. | Defendant Dr. Roy stated that she does not have the authority to create an "exemption" from statute. Doc. 32-13 at 2. Further, Paragraph 96 misstates Dr. Roy's deposition testimony. | Doc. 32-13 at 2. |

St. Mary v. Roy 23-cv-02079

| 97 | Therefore, Archdiocesan preschools cannot participate in UPK Colorado while continuing to operate in a way that is faithful to and consistent with their religious beliefs about gender, sexuality, and the human person. Ex. 5 at 27:8-29:8, 30:17-31:11. | | Defendants can neither admit nor deny Paragraph 97 as Defendants are without sufficient information to form an opinion to the religious beliefs of the Archdiocese, Plaintiff Preschool or the Unnamed Preschools. Further, the Defendants have disavowed enforcement of Contractual Provision 18(B) to "permit religious organizations to hire co-religionists in accordance with federal law and protect religious organizations' employment decision about their ministerial employees in accordance with federal law." Doc. 38-1 ¶16. Finally, St. Mary and St. Bernadette have participated in both Denver Preschool Program ("DPP") and Colorado Child Care Assistance Program ("CCCAP"), which have similar nondiscrimination requirements that have never been problematic for either school or concerning for the Archdiocese. Exhibit 19 to Defendants' Response to the MSJ at ¶ 12 (CCCAP Fiscal Agreement); Exhibit 20 to Defendants' Response to the MSJ at 26 ¶ 3 (DPP Agreement); Seul  Tr. at 125:8-126:6 (Ex. 17 to Defendants' Response to the MSJ) (St. Mary is currently serving one family through CCCAP and is able to participate based on the guidance of the Archdiocese and the parish); Moo Tr. at 160:9-16 (Ex. 2 to | |

St. Mary v. Roy 23-cv-02079

| | | | Defendants' Response to the MSJ) (The CCCAP nondiscrimination requirement has never created a "hardship"); *Id*. at 163:22-24 (The Archdiocese agrees that by signing DPP and CCCAP agreements the preschools are "agreeing to [the nondiscrimination] terms"; Coats Tr. at 1068:8-12 (Ex. 16 to Defendants' Response to the MSJ) (stating that the guidance from the Archdiocese was that entering into DPP was fine.) | |
|---|---|---|---|---|
| 98 | For the Sheleys and families like them, the Department's exclusion of Catholic providers costs them roughly $600 per month for their four-year-old. Declaration of Daniel Sheley (filed Sept. 13, 2023), ECF No. 32-18 ¶¶ 6-7. | Deny. | The Defendants deny that Catholic providers are excluded from the UPK Program. Six preschools affiliated with the Archdiocese of Denver through Catholic Charities signed the UPK Program agreement and are participating in the UPK Program. According to the Supplemental Declaration of Dawn Odean, "I recently learned that six preschools affiliated with the Archdiocese of Denver signed the UPK Program agreement and are participating in the UPK Program… Colorado children were matched to these schools as part of the UPK matching process and these schools have been reimbursed for the services provided to those children. Doc. 47-1 ¶¶ 4-5). Further, the Archdiocese's 30(b)(6) witness stated that "Catholic Charities is the organization under the Archdiocese of | Doc. 47-1 ¶¶ 4-5; Moo Tr. (Ex. 2 to Defendants' Response to the MSJ) at 69:17-19; 71:23-72:1; 75:20-23; Seul Tr.(Ex. 17 to Defendants' Response to the MSJ) at 99:3-5; Sheley Tr (Ex. 18 to Defendants' Response to the MSJ) at 27:17-21. |

St. Mary v. Roy 23-cv-02079

| | | | | |
|---|---|---|---|---|
| | | | Denver that carries out corporal works of mercy" and "ultimately, again in terms of faith and morals, the archbishop is responsible for Catholic Charities as an ecclesiastical entity." Moo Tr. (Ex. 2 to Defendants' Response to the MSJ) at 69:17-19; 71:23-72:1; 75:20-23. Additionally, according to deposition testimony, neither the Sheley family nor families "like them" are paying $600 per month as a result of their chosen preschool deciding not to participate in the UPK Program. St. Mary's tuition rates are lower than the UPK Provider rate. Seul Tr.(Ex. 17 to Defendants' Response to the MSJ) at 99:3-5 (The tuition rate at St. Mary preschool for 21 hours per week [as opposed to 15 hours of UPK] is $4,700.). Further, providers, rather than families, are reimbursed the UPK provider rate as described in undisputed fact # 38. Finally, Ms. Sheley is a full-time employee at St. Mary and receives a 50% tuition discount, in addition to other tuition discounts for having multiple children enrolled at St. Mary; Sheley Tr: 27:17-21. | |
| 99 | At St. Bernadette's, four-year-old enrollment dropped from 11 to 6, an almost 50 percent decline in one year. Declaration of Avery Coats (filed Sept. | Deny. | St. Bernadette's 30(b) witness could not recall the number of four-year-olds currently enrolled at St. Bernadette's for the 2023-2024 school year. Further, Ms. Coats testified that the total enrollment of | Coats Tr. (Ex. 17 to Defendants' Response to the MSJ) at 95:11-98:18; (Doc. No. 32-16) ¶ 15 or Discovery |

St. Mary v. Roy 23-cv-02079

| | | | | |
|---|---|---|---|---|
| | 13, 2023), ECF No. 32-16 ¶ 15; Ex. 7 at 11 (Interrogatory No. 11). | | preschoolers for the 2023-2024 school year was 14 students and that the preschool ended the 2022-2023 school year with 13 students. According to this testimony, there has been an increase in enrollment numbers for the 2023-2024 preschool year. Coats Tr. (Ex. 17 to Defendants' Response to the MSJ) at 95:11- 98:18. Further, St. Bernadette did not provide enrollment records or documents to supports its assertions in Ms. Coats's Declaration (Doc. No. 32-16) ¶ 15 or Discovery Responses Ex C to Declaration of Virginia Carreno. at 11 (Interrogatory No. 11). | Responses Ex. C to Declaration of Virginia Carreno at 11 (Interrogatory No. 11) |
| 100 | Loss of UPK Colorado funding is particularly harmful for low-income families at Well- spring, some of whom will lose out on the opportunity to provide a quality, Catholic preschool education to their children without UPK Colorado funding. Declaration of Avery Coats (filed Sept. 13, 2023), ECF No. 32-16 ¶ 34. | | Defendants can neither admit nor deny Paragraph 100 as Defendants are without sufficient information to form an opinion as to alleged harms to unidentified "low-income families at Wellspring." | |
| 101 | At St. Mary's, four-year-old enrollment has also decreased. Ex. 7 at 11 (Interrogatory No. 11). | Deny. | St. Mary has provided contradictory information about its enrollment. According to Plaintiffs' discovery responses, four-year-old enrollment at St. Mary for 2023-2024 was 56 students despite the assertions in the Amended Complaint that 2023-2024 enrollment is | Ex. C to Declaration of Virginia Carreno at 11 at 11 (Interrogatory No. 11); Doc. 30 ¶ 53. |

St. Mary v. Roy 23-cv-02079

| | | | "only 52 students." Additionally, the Amended Complaint states that St. Mary's in 2022-2023 St. Mary had 64 four-year-old children enrolled compared to its discovery responses that only 60 four-year-olds were enrolled in 2022. Ex. C to Declaration of Virginia Carreno at 11 (Interrogatory No. 11); Doc. 30 ¶ 53. St. Mary has also failed to provide actual enrollment records to support its claims. | |
|---|---|---|---|---|
| 102 | Archdiocesan preschools like St. Mary's and Wellspring have also lost out on provider bonuses, which provide direct financial assistance to preschools that participate in UPK Colorado. Declaration of Tracy Seul (filed Sept. 13, 2023), ECF No. 32-14 ¶ 44. | | Admit that St. Mary and Wellspring would qualify for provider bonuses if they chose to participate in the UPK Program. | |
| 103 | The inability to participate in UPK Colorado has also made it more difficult for St. Mary to retain staff and ensure continuity of care. Id. ¶¶ 42-46. | Deny. | Defendants maintain that St. Mary is able to participate in the UPK Program but chooses not to. Faith-based providers "can, and are encouraged to, participate in the UPK program. To that end, we created an interfaith working group, which meets weekly, to problem solve issues as they arise from within the faith-based community and facilitate participation." Doc. 32-13 at 2 (Dr. Roy's February 28, 2023 Response). | Doc. 32-13 at 2 (Dr. Roy's February 28, 2023 Response). |
| 104 | St. Mary's and St. Bernadette's preschools would immediately seek to participate in UPK Colorado if granted | | Defendants can neither admit nor deny Paragraph 104 as Defendants are without sufficient information to form an opinion | |

St. Mary v. Roy 23-cv-02079

| | | | |
|---|---|---|---|
| an accommodation that would allow them to do so consistent with their faith. Declaration of Avery Coats (filed Sept. 13, 2023), ECF No. 32-16 ¶ 35; Declaration of Tracy Seul (filed Sept. 13, 2023), ECF No. 32-14 ¶ 50. | | as to what actions St. Mary or St. Bernadette "would" take. Further, Defendants maintain that St. Mary and St. Bernadette are able to participate in the UPK Program but choose not to. St. Mary and St. Bernadette have participated in both Denver Preschool Program ("DPP") and Colorado Child Care Assistance Program ("CCCAP"), which have similar nondiscrimination requirements that have never been problematic for either school nor concerning for the Archdiocese. Exhibit 19 to Defendants' Response to MSJ ¶ 12 (CCCAP Fiscal Agreement); Exhibit 20 to Defendants' Response to MSJ at 26 ¶ 3 (DPP Agreement); Seul Tr. (Ex. 17 to Defendants' Response to MSJ) at 125:8-126:6 (St. Mary is currently serving one family through CCCAP and is able to participate based on the guidance of the Archdiocese and the parish); Moo Tr. (Ex. 2 to Defendants' Response to MSJ) at 160:9-16 (The CCCAP nondiscrimination requirement has never created a "hardship"); *Id*. at 163:22-24 (The Archdiocese agrees that by signing DPP and CCCAP agreements the preschools are "agreeing to [the nondiscrimination] terms"; Coats Tr.(Ex. 16 to Defendants' Response to MSJ) at 1068:8-12 (the guidance from the | |

St. Mary v. Roy 23-cv-02079

|  |  |  | Archdiocese was that entering into DPP was fine.), |  |
|---|---|---|---|---|