IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-02079-JLK

ST. MARY CATHOLIC PARISH IN LITTLETON; ST. BERNADETTE CATHOLIC PARISH IN LAKEWOOD; LISA SHELEY; DANIEL SHELEY; and THE ARCHDIOCESE OF DENVER

      Plaintiffs,

v.

LISA ROY, in her official capacity as Executive Director of the Colorado Department of Early Childhood; and DAWN ODEAN, in her official capacity as Director of Colorado's Universal Preschool Program,

      Defendants.

## DEFENDANTS' TRIAL BRIEF

**I.    Standing/Ripeness**

Defendants, Dr. Lisa Roy and Dawn Odean, have submitted a number of filings and undertaken substantial discovery on this Court's subject matter jurisdiction. Prior to the January hearing, Defendants will, from this material, designate an array of party admissions showing that there is no constitutionally aggrieved person or entity in this case, and that any legitimate relief sought by all currently named Plaintiffs is available to each of them now.

Regarding the issue of the hiring practices of the Archdiocese, St. Mary, and St. Bernadette, beyond Defendants' formal disavowals in the present record, testimony at the January trial will indicate that Contractual Provision 18(B), which Plaintiffs refer to as the "Catch-all Provision" in the Program Service Agreement, will be removed from the 2023-2024 Program Service Agreement.

**Appendix A**

If outright dismissal is not entered in advance by the Court, Defendants will be ready to further cross-examine each Plaintiff Preschool and the Plaintiffs Daniel and Lisa Sheley on their respective standing deficiencies (presumably each will be present at the January hearing as parties).

## II.     The UPK Program is Consistent with the First Amendment

### A.     Parties' Position on Testimony

Plaintiffs assert no need for trial testimony in this matter, urging that they have shown now as a matter of law on undisputed facts that the UPK Program violates the First Amendment. Defendants disagree and believe that even if the Court finds jurisdiction, it should deny Plaintiffs' motion for summary judgment.

In support, Defendants are prepared to proffer merits testimony on the express statutory authorization of the Department of Early Childhood Education ("the Department")'s mixed delivery approach and its emphasis on protecting low-income and other vulnerable populations, the efforts made by the Department to maximize preschool seats in Colorado while preserving the statute's quality standards (including its anti-discrimination provisions), the Department's administration of the Program free from exemptions to the statutory antidiscrimination provision, and evidence that supports the statute's antidiscrimination requirement.

B. <u>Testimony Establishing That the UPK Program's Matching Preferences Implement the Statute's Priorities and Do Not Provide Any Exemptions to the Statute's Antidiscrimination Provision.</u>

First, Defendants will ask the Court to take Judicial Notice of applicable findings and intent portions of the early childhood statutes.[1] In particular, the UPK Act captures the legislature's intent: "The General Assembly finds, therefore, that it is in the best interests of the state and consistent with the will of the voters of Colorado to establish [UPK] through a mixed delivery system for children throughout the state and to provide for additional preschool services for children who are in low-income families or who meet identified qualifying factors." Colo. Rev. Stat. § 26.5-4-202(1)(b). The UPK Act goes on to emphasize the Program's commitment to eliminating barriers to preschool access faced by low-income families as well as those with other "qualifying factors" like disability status, Individualized Education Plan ("IEP") status, or dual-language learners. *Id*. at § 26.5-4-204(1), (3), (4). Notably, "quality standards … must include" the disputed non-discrimination clause. Colo. Rev. Stat. § 26.5-4-205(2)(b).

Defense witnesses Ms. Dawn Odean and Ms. Michael Cooke are expected to describe the Program's matching preferences that permit providers to hold some or all of their seats for

---

[1] *E.g.*, Colo. Rev. Stat. § 26.5-1-102(1)(h)(II) (The Department "shall work with other state and local agencies, public and private early childhood providers, head start agencies, nonprofit organizations, and parents and families … to [i]mprove outcomes for children and families through … [i]mplementation of evidence- and practice-based practices in education, family support, and child development …."); *id*. § -109(1)(a) ("operate programs and provide services [to] "[p]romote child physical, oral, and behavioral health and use multigenerational and culturally and linguistically appropriate strategies to support child and parent outcomes that improve overall family well-being"); *id*. § -113(1)(a) (the General Assembly finds and declares that (I) [n]eurobiological research confirms that stressful experiences early in life can have profound and destructive impacts on the architecture of the brain; and (II) [a]dditional scientific research has shown, however, that responsive, nurturing relationships between young children and their caregivers that lead to secure attachment serve as powerful, protective buffers to stressful experiences early in life....").

3

certain students or families to ensure continuity of care, programmatic coverage, and to comply with state and federal law—all consistent with the UPK statute's overall objectives, including its antidiscrimination provision. They will testify regarding the real-world application of the preferences and will explain how the preferences are departures from the Program's default matching process and not from the Program's antidiscrimination requirement. They will describe how the UPK Act prioritizes low-income status and other "qualifying factors" of students and families, and how community preferences—like the congregation preference, the "cooperative" preference for families that agree to volunteer time to support the provider's programming, and the provider preferences for the siblings of current students or the children of its employees—prioritize applicants with various ongoing relationships with specific provider communities.

Out of an abundance of caution and maximum cooperation, these witnesses have been designated as non-retained experts so that they may share disclosed opinions, complex programmatic operations, and observations in the specialized arena of preschool education in general and of the UPK program in particular. The Department may call additional Department witnesses which may testify about the importance of preschool education, the mixed delivery model, and the UPK Program.

They will be followed by Ms. Elsa Holguín of the Denver Preschool Program ("DPP") and Mr. Jesse Burne overseeing the Colorado Child Care Assistance Program ("CCCAP"), who will testify concerning two other programs that have similar non-discrimination provisions in their provider contracts, provisions readily signed by one or more of the named Plaintiff Preschools. These witnesses have also been designated as non-retained experts to ensure that they may venture disclosed observations and opinions relevant to their specialized agencies and

programs. Either or both of these witnesses may also discuss the importance of preschool including the relationship between early childhood education and non-discrimination.

### C. Testimony Establishing That the Program's Antidiscrimination Requirement Protects Vulnerable Children and Their Families From Harmful Discrimination

That testimony will be followed by two nationally- and internationally-recognized experts on the body of psychological evidence that establishes the value and importance of non-discrimination provisions that protect children from discrimination based on sexual orientation and gender identity—evidence that supports that the Program is rationally related (indeed, narrowly tailored) to achieving the state's legitimate (indeed, compelling) interest in protecting Colorado's vulnerable LGBTQ+ families from harmful discrimination in publicly-funded preschools. Dr. Abbie Goldberg (appearing remotely) is a clinical psychologist who specializes in studying and counseling vulnerable families with a LGBTQ+ dimension, and in studying the harm suffered by children and families who experience discrimination on these bases, especially in school environments. Dr. Amy Tishelman is also a clinical psychologist who counsels and writes extensively on transgender and gender diverse children and the lifelong harm caused by discrimination against them. As noted above, the General Assembly reflected concerns about such barriers to equitable access to preschool in the UPK statute's findings and intent sections. And it should be relevant and helpful to the trier of fact to hear real-world testimony regarding children in the preschool setting to determine the questions that must be resolved in this case.

### III. Trial Procedures Disputes

The parties are presently negotiating witness and exhibit deadlines, including objections, to be complete in advance of trial.

## IV. Glossary

Defendants provide the Court with the following definitions of various acronyms and terms commonly used by the Colorado Department of Early Childhood.

- ACEs – Adverse Childhood Experiences or experiences that have the potential to cause significant detriment to a child's well-being, both emotional and physical, and are often traumatic.

- CCCAP – Colorado Child Care Assistance Program.

- CDEC – Colorado Department of Early Childhood, the "Department."

- CDHS – Colorado Department of Human Services.

- Cisgender – of, relating to, or being a person whose gender identity corresponds with the sex the person was identified as having at birth.

- CPP – Colorado Preschool Program.

- DSD/I – Differences of Sex Development, or Intersex.  Term used for unique variation in reproductive or sex anatomy.  Variation may appear in a person's chromosomes, genitals, or internal organs like testes or ovaries.  Some variations are identified at birth, while others may not be identified until puberty or later in life.  *See also:* Intersex, Sex Trait Variance, or VST.

- DPP – Denver Preschool Program.

- Gender Diverse – the extent to which a person's gender, identity, role, or expression differs from the cultural norms prescribed for people of a particular sex.

- Gender Identity - a person's internal sense of being male, female, some combination of male and female, or neither male nor female.

- GeMS – Gender Multispecialty Service, a program at Boston's Children's Hospital.
- Intersex – People who are intersex have genitals, chromosomes, or reproductive organs that do not fit into a male/female binary.  Variation may appear in a person's chromosomes, genitals, or internal organs like testes or ovaries.  Some variations are identified at birth, while others may not be identified until puberty or later in life.  *See also:* DSD/I, Sex Trait Variations, or VST.
- LGBTQ – Lesbian, Gay, Bisexual, Transgender, and Questioning or Queer.
- LGBTQ+ – Lesbian, Gay, Bisexual, Transgender, Queer or Questioning, Intersex, Asexual, and more.
- LCO – Local Coordinating Organization.
- Mixed Delivery System – a system for delivering preschool services through a combination of school- and community-based preschool providers that include family care homes, child care centers, and head start agencies, and that are funded by a combination of public and private money. Colo. Rev. Stat.  § 26.5-4-203 (2023).
- Non-Binary – relating to or being a person who identifies with or expresses a gender identity that is neither entirely male nor entirely female.
- RAC – Rules Advisory Council.
- Sex Trait Variations – term used for unique variation in reproductive or sex anatomy.  Variation may appear in a person's chromosomes, genitals, or internal organs like testes or ovaries.  Some variations are identified at birth, while others may not be identified until puberty or later in life.  *See also*: DSD/I, Intersex, VST.
- Sexual Orientation – an often-enduring pattern of emotional, romantic, and/or sexual

7

attraction to men, women, or both.  It also refers to an individual's sense of personal and social identity based on those attractions, related behaviors, and membership in a community of others who share those attractions and behaviors.

- Social Transition – the process by which transgender individuals adopt the name, pronouns, gender expression (such as clothing and haircuts), relationships, and behavior (such as which restroom to use) to match their gender identity. Some individuals choose to affirm their gender identity through medical means, such as the use of hormones or surgery.

- SOGI or SO/GI – Sexual Orientation and Gender Identity.

- Transgender – of, relating to, or being a person whose gender identity differs from the sex the person was identified as having at birth.

- Transphobia/Transphobic – irrational fear of, aversion to, or discrimination against transgender people.

- The Trevor Project – an American nonprofit organization founded in 1998. Focused on suicide prevention efforts among lesbian, gay, bisexual, transgender, queer, and questioning youth, they offer a toll-free telephone number where confidential assistance is provided by trained counselors.

- UPK – Universal Preschool Program, the "Program."

- VST – the abbreviation for "sex trait variations." The term used for unique variation in reproductive or sex anatomy.  Variation may appear in a person's chromosomes, genitals, or internal organs like testes or ovaries.  Some variations are identified at birth, while others may not be identified until puberty or later in life.  *See also:* DSD/I, Intersex, and

Sex Trait Variations.

- WPATH – World Professional Association of Transgender Health.

Dated: December 18, 2023

PHILIP J. WEISER
Attorney General

s/ *J. Gregory Whitehair*

*Virginia R. Carreno,* Second Assistant Attorney General
*Nicole Rust*, Assistant Attorney General
*J. Gregory Whitehair*, Assistant Attorney General
*Janna K. Fischer*, Senior Assistant Attorney General
1300 Broadway, Denver, CO 80203
Telephone: (720) 508-6349
Email: virginia.carreno@coag.gov; niki.rust@coag.gov; greg.whitehair@coag.gov; janna.fischer@coag.gov
*Attorneys for Defendants*