IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| ST. MARY CATHOLIC PARISH IN LITTLETON; ST. BERNADETTE CATHOLIC PARISH IN LAKEWOOD; DANIEL SHELEY; LISA SHELEY; and THE ARCHDIOCESE OF DENVER,<br><br>*Plaintiffs*,<br><br>v.<br><br>LISA ROY, in her official capacity as Executive Director of the Colorado Department of Early Childhood; and DAWN ODEAN, in her official capacity as Director of Colorado's Universal Preschool Program,<br><br>*Defendants*. | Case No. 1:23-cv-2079-JLK<br><br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICE REGARDING POST-TRIAL DEVELOPMENTS (ECF NO. 110)** |

Defendants' Notice changes nothing and shouldn't delay the Court from resolving this case expeditiously and in Plaintiffs' favor. Indeed, while there are good reasons why this Court need not even consider Defendants' thirteenth-hour Notice, even if it does consider it, the proposed amended language further supports Plaintiffs' claims.

*First*, this case's record is closed, and has been for two months. *See Joseph v. Terminix Int'l Co.*, 17 F.3d 1282, 1285 (10th Cir. 1994) (affirming denial of motion to reopen). Defendants don't argue judicial notice, and they don't ask the Court to reopen the record. Defendants may be unhappy with the case they developed over extensive discovery, hundreds of pages of briefing, and a three-day trial—but it is (at least presumptively) too late to change it.

*Second*, neither of Defendants' cited changes is currently in effect and thus cannot alter Plaintiffs' current entitlement to relief. The new provider agreement cited is for *next* school year. ECF No. 110 ¶ 2. And the new proposed regulations aren't set for a public hearing until April 28, and

1

won't take effect until May 30 at the earliest.[1] Defendants' repeated changes and prior delays suggest it could take even longer.

Meanwhile, Plaintiffs are suffering harm *now*. New providers and families can sign up and begin participating in UPK Colorado at any time. ECF No. 108 ¶¶ 62-63. And "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020). This case is urgent; the Court should maintain its course of "get[ting] this matter decided as quickly as possible." Tr. (Day 3, Court) 453:7-9.

*Third*, should the Court (notwithstanding the above) find it appropriate to consider Defendants' proposed changes, those changes only bolster Plaintiffs' case. Defendants' revision of next year's provider agreement to remove Paragraph 18(B) simply confirms what Defendants already conceded at trial: they have no "authority" to regulate the Plaintiff preschools' employment practices. ECF No. 108 ¶ 158. Plaintiffs' success on the merits of their employment-related claims is therefore plain. *Id.* ¶¶ 157-69 (also explaining why voluntary cessation doesn't moot employment claims).

As for the new proposed regulations, the only conceivably relevant change Defendants flag relates to yet another proposed new definition of "congregation" for purposes of the congregation exception, their third take on the subject since this litigation commenced. ECF No. 110 ¶ 3 ("revision of the Congregation Preference"); *see* Revised Proposed Regulations, https://perma.cc/6JSX-92DE.[2] But with respect to the congregation exception, this Court already identified the key question: whether it "allows providers to discriminate on the basis of a particular status enumerated in

---

[1] CDEC Rule Tracker, https://bit.ly/49FhVUp (last accessed Mar. 6, 2024) (Adoption date of April 28, 2024; Effective date of May 30, 2024).

[2] Defendants' new proposed definition is further evidence of ongoing (yet unsuccessful) attempts to manipulate the UPK regulations in ways that would exclude Plaintiffs from UPK Colorado yet evade this Court's scrutiny. In particular, this new definition appears to be a calculated

the nondiscrimination requirements," *i.e.*, "religious affiliation." ECF No. 99 at 26. The current definition certainly does that, as Plaintiffs have explained at length. ECF No. 108 ¶¶ 103-05 & n.7. And if anything, the proposed new definition only makes that result clearer.

Under the proposed new definition, a faith-based provider's "congregation" means "members of the community that the faith-based provider serves as the faith-based provider defines that community." *Supra* Revised Proposed Regulations at 2. This definition outsources the "congregation" definition to providers themselves, affording them broad discretion to define their communities along apparently any lines, including faith-based ones. And many faith-based providers *do* define their "congregations" or "communities" based in part on religion; indeed, many faith-based schools' reason for existence is to help parents bring up their children in a shared faith—*i.e.*, in alignment with a particular religious affiliation. *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2064-66 (2020) ("survey[ing]" the "close connection that religious institutions draw between their central purpose and educating the young in the faith"); *see* Tr. (Day 1, Chilelli) 67:12-14 ("Any Catholic" can be a "parishioner" of his geographic parish).

Defendants presumably would claim that the proposed new definition remains subject to the Equal Opportunity Mandate. They said that about the current definition, too. ECF No. 109 at 43. Yet they confirmed at trial that the current definition allows Catholic schools to reserve seats for Catholics and Lutheran schools for Lutherans. ECF No. 108 ¶ 105. The proposed new definition—

---

response to arguments made in Plaintiffs' Proposed Findings of Fact and Conclusions of Law. *See* ECF No. 108 ¶ 105. In fact, this is the Department's *third* take on what constitutes a "congregation" in response to Plaintiffs' attempts to obtain a religious accommodation. *See* ECF No. 72 at 14 (describing the prior proposed regulatory definition); ECF No. 47 at 3-4 (describing the Department's pre-regulation understanding of "congregation"). These targeted actions confirm that Defendants—whatever they are doing—certainly are *not* neutrally applying generally applicable laws in the sense contemplated by *Smith*. *See Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 535 (1993) (striking down "a 'religious gerrymander,' [as] an impermissible attempt to target petitioners and their religious practices" (internal citation omitted)).

3

being far broader than the current one—even more clearly permits that result. And even if (counterfactually) the proposed new definition somehow did *not* allow the same sort of religious-affiliation prioritization that the current definition allows, Defendants at minimum have already confirmed that they believe they *could*, consistent with the UPK statute, allow Catholic schools to prefer Catholics and Lutheran schools to prefer Lutherans. *Id.*; *see* Tr. (Day 2, Odean) 270:12-17. That alone suffices: "the mere existence of government discretion," even if not exercised, "is enough to render a policy not generally applicable." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 685-88 (9th Cir. 2023) (en banc) (citing *Fulton v. City of Philadelphia*, 593 U.S. 522, 537 (2021)).

\* \* \*

The Court should grant Plaintiffs the relief sought in their Proposed Judgement and Order, ECF No. 108 at 69-70.

Dated: March 7, 2024

Respectfully submitted,

/s/ Eric C. Rassbach
Eric C. Rassbach
Mark L. Rienzi
Joseph C. Davis
Nicholas R. Reaves
Jordan T. Varberg\*
Amanda G. Dixon
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave, N.W.
  Suite 400
Washington, D.C. 20006
(202) 955-0095
erassbach@becketlaw.org

\* Not admitted to the D.C. Bar; admitted only in Illinois. Supervised by licensed D.C. Bar members.

5

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing document on all parties via CM/ECF and as required by the relevant federal and local rules.

Dated: March 7, 2024                    /s/ Eric C. Rassbach
                                         Eric C. Rassbach

5