IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| ST. MARY CATHOLIC PARISH IN LITTLETON; ST. BERNADETTE CATHOLIC PARISH IN LAKEWOOD; DANIEL SHELEY; LISA SHELEY; and THE ARCHDIOCESE OF DENVER,<br><br>*Plaintiffs*,<br><br>  v.<br><br>LISA ROY, in her official capacity as Executive Director of the Colorado Department of Early Childhood; and DAWN ODEAN, in her official capacity as Director of Colorado's Universal Preschool Program,<br><br>*Defendants*. | Case No. 1:23-cv-2079-JLK<br><br>**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY** |

Plaintiffs respectfully submit this notice of supplemental authority to inform the Court of a recent decision in *Does 1-11 v. Bd. of Regents of Univ. of Colorado*, No. 21-1414, 2024 WL 2012317, __ F.4th __ (10th Cir. May 7, 2024). In *Does 1-11*, the Tenth Circuit held that the implementation of a COVID vaccine mandate at a University of Colorado campus was neither neutral nor generally applicable regarding religion and failed strict scrutiny. That was so because the challenged policies, among other things, offered broader secular exemptions than religious exemptions, contained mechanisms for discretionary exemptions, and favored certain religious exemption requests over others. Ex. 1 at 25-49. Several aspects of the Tenth Circuit's decision are relevant here.

First, the Tenth Circuit clarified that a law is not generally applicable if it "makes a 'value judgment in favor of secular motivations, but not religious motivations.'" Ex. 1 at 46. Therefore, the court held, a "government policy that grants an exemption 'for medical reasons' but denies the same exemption 'for religious reasons' is not generally applicable." *Id*. The same is true here: Defendants have permitted some UPK preschools to deny families an equal opportunity to enroll

1

for secular reasons, while telling Plaintiffs that their sincere religious beliefs do not merit the same accommodation. *See* ECF No. 108 at 35-43 (citing evidence that providers can give preference in preschool admissions on account of income level, disability status, race, and gender identity, among others). That, as *Does 1-11* recognized, is a "value judgment" by Defendants. Put simply, Defendants have "devalu[ed]" Plaintiffs' religious reasons "by judging them to be of lesser import than nonreligious reasons." Ex. 1 at 46. This triggers strict scrutiny under the Free Exercise Clause. *Id.* at 47.

Second, the court made clear that "[a] government policy 'is not generally applicable if it invite[s] the government to consider the particular reasons for a person's conduct.'" *Id.* at 36. In *Does 1-11*, the University's administration "consider[ed] the particular reasons" for an exemption request and "provided 'individualized exemptions' to applicants" when their request was "justified" in the "Administration's discretion." *Id.* at 37. The same is true here: Defendants even have an online form allowing providers to "Request[ ]" individualized "Exception[s]." ECF No. 108 at 43; *see also id.* at 43-46.

Third, the court confirmed that "statutes involving discrimination on the basis of religion, including interdenominational discrimination, are subject to heightened scrutiny." Ex. 1 at 36. Thus, if the government offers a religious exemption that discriminates "'in favor of some religions and against others,' it fails the neutrality test, and strict scrutiny applies." *Id*. As Plaintiffs explained, this is precisely what Defendants' congregation exemption does here. ECF No. 108 at 63-65.

Fourth, the court held that consideration of the "historical background of the decision under challenge," and "the specific series of events leading to the enactment or official policy in question," can support a finding of government hostility toward religion. Ex. 1 at 43. As the court explained, the University administration's September 21 policy was adopted "only after receiving notice of impending litigation" and conveniently reached "precisely the same results" as the September 1 policy. *Id*. at 44. This helped the court to "draw the inference that the Does' religious objections

2

were not considered with the neutrality that the Free Exercise Clause requires" under the September 21 policy, even absent evidence of "actual animus." *Id.* at 45, 53 (cleaned up); *see also id.* at 53 (explaining that if official statements of hostility are "the bar for an inference of hostility, it will almost never be cleared, even in most cases of egregious discriminatory animus"). Here too, the "specific series of events" leading to Defendants' most recent "congregation" definition—which, like their prior definition, appears to be an (unsuccessful) effort to respond to Plaintiffs' litigation arguments and fortify their exclusion of Plaintiffs from UPK—confirms non-neutrality. ECF No. 112 at 2-3 n.2; *see* ECF No. 108 at 46-47.

Dated: May 13, 2024

Respectfully submitted,

/s/ Eric C. Rassbach
Eric C. Rassbach
Mark L. Rienzi
Joseph C. Davis
Nicholas R. Reaves
Jordan T. Varberg
Amanda G. Dixon
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave, N.W.
Suite 400
Washington, D.C. 20006
(202) 955-0095
erassbach@becketlaw.org

CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing document on all parties via CM/ECF and as required by the relevant federal and local rules.

Dated: May 13, 2024               /s/ Eric C. Rassbach
                                  Eric C. Rassbach

4